**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4082

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

JOSE ALFREDO MACIAS LOZANO,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:11-cr-00101-MR-WCM-1)

Submitted:  March 18, 2020                                        Decided:  June 17, 2020

Before NIEMEYER, DIAZ, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

Anthony Martinez, Federal Public Defender, Joshua B. Carpenter, Appellate Chief, Asheville, North Carolina, Jared P. Martin, Assistant Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, Charlotte, North Carolina, for Appellant.  R. Andrew Murray, United States Attorney, Charlotte, North Carolina, Amy E. Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

DIAZ, Circuit Judge:

Jose Alfredo Macias Lozano, a native and citizen of Mexico, was convicted of a felony while unlawfully present in the United States and was deported. He reentered the United States and committed a number of other state crimes. In 2011, while in custody for one of those crimes, Lozano was charged with federal illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2). But he was deported without ever learning of the federal charge. In 2018, after Lozano had reentered the United States again, he was arrested on the still-pending federal charge. Lozano pleaded guilty and received a below-Guidelines sentence.

On appeal, Lozano argues that the delay of over six years between the date of his federal charge and the date of his guilty plea violated his Sixth Amendment right to a speedy trial. But this argument is foreclosed by Lozano's guilty plea and, in any event, fails on the merits.

Lozano also asserts that his sentence is procedurally unreasonable because the district court failed to fully consider his non-frivolous arguments for a downward variance. The record, however, proves otherwise. The district court heard Lozano's arguments and varied downward, albeit not as far as Lozano would have liked. In so doing, the court acted well within its discretion.

We therefore affirm the district court's judgment.

2

I.

When Lozano was a few months old, his parents brought him from Mexico to the United States, where he lived until, at age twenty-six, he was deported after being convicted of a Texas felony offense. Sometime thereafter, Lozano reentered the United States and was convicted of a number of North Carolina felony drug offenses.

In May 2011, Lozano was arrested and charged with another North Carolina felony drug offense. In December 2011, while in custody on that charge, he was also charged with illegal reentry after deportation subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).

Lozano pleaded guilty to the 2011 North Carolina charge and was sentenced to 10 to 12 months' imprisonment. He finished serving that sentence in June 2013 and was deported to Mexico. He never appeared in court on the federal illegal reentry charge, and he didn't know that it was pending.

Lozano reentered the United States again in 2013, and in May 2018, he was arrested on the still-pending federal charge. After his arrest, he gave law enforcement officers information about drug traffickers he had been involved with. But because Lozano hadn't lived in the area since 2013, the information he provided was stale. In September 2018, he pleaded guilty to the 2011 federal illegal reentry charge.

At Lozano's sentencing hearing, he sought a sentence of 27 months' imprisonment, a downward variance from his advisory Sentencing Guidelines range of 63 to 78 months' imprisonment. Lozano's counsel explained, "We believe . . . some sort of reduction is warranted for [Lozano] because I think he does have unusual circumstances in his case."

3

J.A. 69. Counsel noted that Lozano had "[fallen] through the cracks" and was unaware of the 2011 federal charge until he was arrested in 2018. *Id.*

Lozano also relied on two Sentencing Guidelines provisions to support his request for a downward variance. First, Lozano urged that a variance was warranted because he had provided information to law enforcement officers about drug traffickers that he had known. *See* U.S.S.G. § 5K1.1 (allowing for a downward departure where a defendant has provided substantial assistance to authorities in the investigation of another person). Lozano acknowledged that his information was stale and that his assistance wasn't substantial, but he claimed that a downward variance was still warranted because he had done the best he could under the circumstances.

Second, Lozano argued that a variance was warranted due to his cultural assimilation. *See* U.S.S.G. § 2L1.2 cmt. n. 8 (allowing for a downward departure where a defendant convicted of unlawfully entering the United States has assimilated into United States culture). Lozano contended that he met the "spirit of the departure," J.A. 71, because he has lived in the United States almost continuously, his close family members all live in the United States, he was educated in the United States, and he speaks English.

The district court questioned how Lozano qualified for a cultural assimilation departure given his high criminal history category. In response, Lozano noted that he hadn't had any convictions since he reentered the country in 2013, and he asserted that if he had been charged with illegal reentry in 2018, his criminal history category would have been lower because some of his prior convictions would not have fallen within the time period relevant for calculating his criminal history category. He added that he had been

4

"beating himself up" about the charge and could have completed service of any sentence imposed for the charge had he known about it in 2011. J.A. 74.

The government agreed that a downward variance was appropriate. The government accepted "some responsibility" for the delay between the date of the federal charge and Lozano's arrest because it "should have had a detainer on [Lozano]." J.A. 76. The government also acknowledged that if Lozano had been arrested sooner, the information he provided to law enforcement may have been more helpful.

The district court sentenced Lozano to 51 months' imprisonment. The court explained that illegal reentry is a serious offense that undermines the country's immigration system. The court also cited the need for specific and general deterrence. It explained that it varied downward from Lozano's Guidelines sentencing range "based on the government concurring that some degree of downward variance is warranted under the circumstances here." J.A. 83.

As to Lozano's argument for a downward variance based on his assistance to law enforcement, the court explained that some variance was warranted, but the court also noted that Lozano's information was stale. As to Lozano's argument for a downward variance for his cultural assimilation, the court allowed for some variance because Lozano had been brought to the country at a young age and had "much more law-abiding activity" after he reentered the country in 2013. J.A. 84. But it didn't vary to the degree Lozano wanted because at other times, Lozano was "assimilating not to the cultural fabric of this country but to a criminal underculture." *Id.*

This appeal followed.

II.

Lozano argues that (1) the six-year delay between the date of his federal illegal reentry charge and the date of his guilty plea violated his Sixth Amendment right to a speedy trial; and (2) his sentence is procedurally unreasonable because the district court failed to address his non-frivolous arguments for a lower sentence. We take up the alleged Sixth Amendment violation first.

A.

The government's response to Lozano's speedy trial claim effectively disposes of it: Lozano waived the claim when he pleaded guilty.

"It is the general rule that when a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea, and thus has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea." *United States v. Fitzgerald*, 820 F.3d 107, 110 (4th Cir. 2016) (cleaned up); *see also Blackledge v. Perry*, 417 U.S. 21, 29–30 (1974) ("[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." (cleaned up)).

Citing the Supreme Court's decision in *Class v. United States*, 138 S. Ct. 798 (2018), Lozano contends that his speedy trial claim is excepted from this general rule. He is wrong.

In *Class*, the Court held that the defendant's guilty plea didn't waive his claim that his statute of conviction was unconstitutional. 138 S. Ct. at 803. This holding, the Court explained, flowed from its decisions in *Blackledge v. Perry*, 417 U.S. 21 (1974), and

*Menna v. New York*, 423 U.S. 61 (1975) (per curiam). *Class*, 138 S. Ct. at 803–04. In *Blackledge*, the Court held that the defendant's guilty plea didn't bar his claim of vindictive prosecution because the claim challenged "the very initiation of the proceedings against [the defendant]" and implicated the defendant's "right not to be haled into court at all upon the . . . charge." 417 U.S. at 30–31. In *Menna*, the Court concluded that the defendant's guilty plea didn't bar his claim of double jeopardy because it too was a claim that "the State is precluded by the United States Constitution from haling a defendant into court on a charge." 423 U.S. at 62. Drawing on these principles, the Court in *Class* held that a guilty plea doesn't bar claims that "challenge the Government's power to criminalize [the defendant's] (admitted) conduct" and that "thereby call into question the Government's power to constitutionally prosecute." 138 S. Ct. at 805 (cleaned up).

The Court contrasted these claims with those that "focus upon case-related constitutional defects that occurred prior to the entry of the guilty plea." *Id.* at 804–05 (cleaned up). Such claims include allegations that evidence was obtained in violation of the Fourth Amendment or that the indicting grand jury was unconstitutionally selected. *Id.* at 805. A guilty plea renders these claims "irrelevant to the constitutional validity of the conviction," *id.* at 805, and they are barred by the plea, *see id.*

Neither *Class* nor the principles on which it relies support Lozano's contention that his speedy trial claim survived his guilty plea. For starters, Lozano doesn't argue that his statute of conviction is unconstitutional. And his speedy trial claim doesn't implicate the right set out in *Blackledge* and *Menna*—the right "not to be haled into court at all upon the . . . charge." *Blackledge*, 417 U.S. at 30.

7

It is true that Sixth Amendment speedy trial violations call into question the government's power to prosecute after a certain amount of time. *See Strunk v. United States*, 412 U.S. 434, 439–40 (1973) (concluding that the remedy for a speedy trial violation is dismissal of the indictment). But this is not the same power as that at issue in *Blackledge*, *Menna*, and *Class*. In each of those cases, the defendants alleged that the "*very initiation of the proceedings* against [them]" was unconstitutional, and they thereby challenged the government's power to "hale[] [them] into court *at all*." *Blackledge*, 417 U.S. at 30–31 (emphasis added). Put differently, they challenged the government's power to prosecute *in the first instance*.

Indeed, whether a claim challenges this power is the "fundamental distinction," *id.*, between claims that survive a guilty plea and claims that challenge case-related constitutional defects that occurred prior to the entry of the guilty plea, which don't survive the plea. *See id.* Speedy trial claims don't challenge the government's power to *initiate the proceedings* against the defendant. Instead, they challenge "case-related government conduct that [took] place before the plea [was] entered," which "[a] valid guilty plea . . . renders irrelevant." *Class*, 138 S. Ct. at 805. Thus, they don't fit the exception set out in *Blackledge*, *Menna*, and *Class*.

Lozano's reliance on the dissent in *Class* is misplaced. True, the dissent there posited that under the majority's holding, a defendant's guilty plea wouldn't waive an alleged Speedy Trial Act violation. *Id.* at 814 (Alito, J., dissenting). But the dissent reached this conclusion by attributing to the majority a rule that it didn't adopt—the rule that "the only arguments waived by a guilty plea are those that contradict the facts alleged

8

in the charging document."[1] *Id.* Because a Speedy Trial Act claim wouldn't contradict the defendant's admission of factual guilt, the dissent reasoned, the claim wouldn't be waived by the defendant's guilty plea. *Id.*

Respectfully, the *Class* majority did not adopt this rule. Instead, it explained that among the claims that are barred by the defendant's guilty plea are those that "contradict the terms of the indictment or the written plea agreement" or are inconsistent with the defendant's "admission that he did what the indictment alleged." *Id.* at 804 (majority opinion). This does not, we think, support the dissent's assertion that those are the *only* claims waived by a guilty plea.

For these reasons, we conclude that a defendant like Lozano waives his or her speedy trial claim by entering a guilty plea.

---

[1] The dissent derived this rule from a footnote in *Menna*:

> [A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. . . . A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

423 U.S. at 62 n.2. The dissent interpreted this language to mean that "a guilty plea allows the litigation on appeal of any claim that is not inconsistent with the facts that the defendant necessarily admitted." *Class*, 138 S. Ct. at 812 (Alito, J., dissenting). As we explain, we disagree that the majority adopted this rule.

9

B.

Even if Lozano hadn't waived his speedy trial claim, the claim would fail.

Lozano concedes that because he didn't raise his speedy trial claim before the district court, we review for plain error. Lozano must therefore show that an error occurred, that it was plain, and that the error affected his substantial rights. *See United States v. Martinez*, 277 F.3d 517, 524 (4th Cir. 2002). "Even when these three conditions are satisfied, we retain discretion whether to correct the error, which we should exercise only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

To determine whether a Sixth Amendment speedy trial violation occurred, we consider four factors: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

As to the length of the delay, the defendant "must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (cleaned up). If the defendant makes this showing, the court then considers the length of the delay alongside the remaining factors. *Id.* at 652. We agree with Lozano that the significant delay of over six years is presumptively prejudicial.

As to the reason for the delay, "[d]eliberate delay to hamper the defense weighs heavily against the prosecution." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (cleaned up). In contrast, "[a] more neutral reason such as negligence or overcrowded courts should be

10

weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. We agree with Lozano that the reason for the delay weighs slightly in his favor. While there's no evidence that the government deliberately delayed Lozano's arrest, the government admitted at sentencing that it bore some responsibility, and Lozano bore none.

However, the remaining factors weigh against Lozano. The Supreme Court has "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532. Lozano didn't assert his right to a speedy trial even after he was released from state custody, learned of the federal charge, and was appointed counsel.

And Lozano has failed to show any prejudice. Prejudice, "while not . . . essential to the establishment of a violation of the right, is a prime issue and a critical factor." *Ricon v. Garrison*, 517 F.2d 628, 634 (4th Cir. 1975) (cleaned up). Prejudice should be assessed in relation to the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. In general, the defendant must demonstrate actual prejudice or "the credible possibility of prejudice." *Ricon*, 517 F.2d at 634 (cleaned up).

Lozano didn't know of the pending federal charge until he was arrested in 2018. Thus, he didn't experience oppressive pretrial incarceration or anxiety during the delay. Nor does Lozano assert that the delay impaired his ability to prepare a defense.

11

Lozano's contention that the delay cost him the opportunity to serve a concurrent sentence and to receive a downward departure for substantial assistance to law enforcement is unavailing, as the record doesn't show a credible possibility that he would have received a concurrent sentence, that his information would have substantially assisted the government, or that the government would have sought a downward departure.[2] *See United States v. Goossens*, 84 F.3d 697, 704 (4th Cir. 1996) (noting that the government has "broad discretion" to move for a downward departure based on substantial assistance); *cf. United States v. Uribe-Rios*, 558 F.3d 347, 358 (4th Cir. 2009) ("[B]ecause there is no right to serve state and federal sentences concurrently, an appellant's lost chance of doing so cannot be used to establish prejudice for the purposes of challenging pre-indictment delay.").

Lozano's argument that his criminal history category was overrepresented due to the delay is also unavailing. A defendant's criminal history category is calculated based on his prior convictions at the time the defendant commenced the offense for which he is being sentenced. *See* U.S.S.G. § 4A1.2(e). Thus, Lozano's criminal history category would have been the same if he had been charged in 2018. And Lozano hasn't shown a credible possibility that he would have been sentenced for the federal charge before

---

[2] At sentencing, the government acknowledged that "if [Lozano] had presented that information . . . four or five years ago maybe it wouldn't have been old then. . . . Maybe it would have been confirmed throughout the investigation. Maybe he would have gotten two or three levels for giving that information." J.A. 77. We don't think this series of maybes amounts to a credible possibility that Lozano would have received a downward departure for substantial assistance.

pleading guilty to the May 2011 North Carolina charge, such that the state charge would not have contributed to his criminal history category.

We also disagree with Lozano that he's entitled to relief based on the presumption of prejudice arising from the significant delay. In *Doggett*, the Supreme Court concluded that the defendant was entitled to relief because the government's negligence caused a delay of over eight years and "the presumption of prejudice, albeit unspecified, [was] neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted." 505 U.S. at 658 (cleaned up). A defendant acquiesces to a delay when he or she fails to assert the right to a speedy trial. *Barker*, 407 U.S. at 534–35. Thus, the presumption of prejudice here was extenuated by Lozano's failure to assert his right to a speedy trial.

In sum, because "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial," *Barker*, 407 U.S. at 532, and because Lozano hasn't shown prejudice, which is "a critical factor," *Ricon*, 517 F.2d at 634, we conclude that even if Lozano hadn't waived his speedy trial claim, he couldn't show that an error occurred. Thus, the district court did not err—plainly or otherwise—in not sua sponte dismissing Lozano's indictment.

## III.

We next turn to Lozano's contention that his sentence is procedurally unreasonable because the district court failed to address his non-frivolous arguments for a lower sentence.

13

"We review a district court's sentence for an abuse of discretion." *United States v. Provance*, 944 F.3d 213, 217 (4th Cir. 2019). "Under this deferential standard, we first review for procedural reasonableness." *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017). Procedural errors include failing to adequately explain the sentence. *Provance*, 944 F.3d at 218. For every sentence, the district court must "place on the record an individualized assessment based on the particular facts of the case before it." *Blue*, 877 F.3d at 518 (cleaned up). The court's explanation "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

When a defendant presents non-frivolous reasons for imposing a different sentence, the district court "must address or consider" them and explain why it has rejected them. *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). The explanation is sufficient "if it, although somewhat briefly, outlines the defendant's particular history and characteristics not merely in passing or after the fact, but as part of its analysis of the statutory factors and in response to defense counsel's arguments for a downward departure." *Blue*, 877 F.3d at 519 (cleaned up). District courts need not spell out their responses to defendants' arguments where context makes them clear. *Id.* at 520–21. But the context must make it "patently obvious that the district court found [the defendant's] arguments to be unpersuasive." *Id.* at 521 (cleaned up).

Lozano argues that his sentence is procedurally unreasonable because the district court failed to address five of his arguments for a lower sentence—the government's

14

responsibility for the delay, the harm the delay caused him and his family, the length of the delay, the delay's effect on his ability to receive a substantial assistance downward departure, and the nature of his criminal history.

We are satisfied that the district court considered these arguments when it fashioned Lozano's below-Guidelines sentence and that it adequately explained why it didn't vary downward to the degree Lozano had requested. In particular, the court considered the government's responsibility for the delay when it noted that the government had agreed to a downward variance. The government had so agreed in part because it bore "some responsibility" for the delay. J.A. 76.

The court also considered the overall effect of the delay, including its effect on Lozano's attempt to assist law enforcement, and the nature of Lozano's criminal history. Specifically, the court explained that a downward variance was warranted "under the circumstances here." J.A. 83. It also explained that it had balanced the fact that Lozano's information was stale against his "open" and "honest" attempt to assist law enforcement. J.A. 83. And it explained that it had balanced Lozano's criminal history against his "later and much more law-abiding activity." J.A. 84.

The court agreed with Lozano that a downward variance was warranted despite his criminal history, but it concluded that "a reduction to the extent advocated by defense counsel" wasn't warranted given that history. *Id.* Thus, we think it patently obvious that the district court considered Lozano's arguments and found them only partially persuasive.

Finally, we disagree with Lozano that our recent decisions in *United States v. Torres-Reyes*, 952 F.3d 147 (4th Cir. 2020), and *United States v. Lewis*, 958 F.3d 240 (4th

15

Cir. 2020), support his procedural unreasonableness argument. In *Torres-Reyes*, the defendant made both legal and equitable arguments for a lower sentence. *See id.* at 151–52. In explaining the defendant's sentence, the district court only addressed the legal argument. *Id.* at 152. Because the record didn't assure us that the district court had considered the equitable argument, we concluded that the defendant's sentence was procedurally unreasonable. *Id.* at 152–53.

In *Lewis*, the defendant offered numerous arguments for a lower sentence. 958 F.3d at 244–45. Because the district court didn't address the "central thesis" of those arguments—the defendant's role as a working father—we concluded that the defendant's sentence was procedurally unreasonable. *Id.* at 245; *see also United States v. Nance*, 957 F.3d 204, 214 (4th Cir. 2020) (concluding that "the district court, having fully addressed [the defendant's] central thesis . . . was not also required to address separately each supporting data point marshalled on its behalf").

Here, Lozano only made equitable arguments for a lower sentence. *See* J.A. 70 (acknowledging that the information he provided didn't "[rise] to the level of substantial assistance"); J.A. 71 (acknowledging that he didn't "quite meet the [cultural assimilation] departure criteria"). And, as we have explained, the district court considered these arguments and rejected them, at least in part. In doing so, it addressed both Lozano's central thesis—that he should receive a downward variance because of the delay—and his supporting arguments.

16

\* \* \*

For the reasons given, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*