**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-4182**

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

GUSTAVO PEREZ-PAZ, a/k/a Jose Gustavo Perez, a/k/a Gustavo Perez-Diaz, a/k/a
Santiago Orlando-Castellano,

        Defendant - Appellant.

-------------------------------------------

NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS
GUILD,

        Amicus Supporting Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at
Richmond. Henry E. Hudson, Senior District Judge. (3:18-cr-00101-HEH-1)

_____

Argued: March 12, 2021                           Decided: June 30, 2021

_____

Before GREGORY, Chief Judge, and FLOYD and THACKER, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Floyd wrote the opinion in which
Chief Judge Gregory and Judge Thacker joined.

_____

**ARGUED:** Joseph Stephen Camden, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Richmond, Virginia, for Appellant. Aidan Taft Grano, OFFICE OF THE

UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.   Khaled Alrabe, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, for Amicus Curiae.

———————————

FLOYD, Circuit Judge:

Defendant-Appellant Gustavo Perez-Paz is a citizen of Honduras who first entered the United States in 1984. He has twice been removed from and subsequently reentered the United States. His case comes before us now on appeal from his guilty plea to one count of illegal reentry after deportation for an aggravated felony in violation of 8 U.S.C. § 1326(a), (b)(2). He challenges his statute of conviction as unconstitutional and the district court's sentence as procedurally unreasonable. We hold that § 1326 is constitutional, but we remand for resentencing on procedural reasonableness grounds.

I.

A.

We briefly review Perez-Paz's criminal history. Perez-Paz has two California felony drug convictions from 1990 and 1993, respectively. In 1993, the Immigration and Naturalization Service (INS) discovered Perez-Paz during his incarceration in California. INS conducted removal proceedings, and Perez-Paz was removed to Honduras for the first time on January 6, 1995.

Sometime thereafter, Perez-Paz illegally reentered the United States. In 1999, he was arrested in South Carolina and convicted of driving under the influence and driving with no driver's license. In 2001, he was again arrested in South Carolina and convicted of driving with no driver's license.

Ten years later, in 2011, Perez-Paz was arrested in Virginia and convicted of driving while intoxicated and driving with no driver's license. Immigration and Customs

3

Enforcement (ICE) discovered Perez-Paz during his incarceration in Virginia. On November 1, 2011, Perez-Paz was indicted in the Eastern District of Virginia on one count of illegal reentry after deportation for an aggravated felony in violation of § 1326(a), (b)(2). Perez-Paz pleaded guilty on April 13, 2012, and he was sentenced to twenty-four months of incarceration before deportation. On July 23, 2013, following the completion of his sentence, Perez-Paz was removed to Honduras for the second time.

Sometime thereafter, Perez-Paz again illegally reentered the United States. On May 2, 2018, he was arrested in Virginia and convicted of a hit and run, driving under the influence, and driving with no driver's license. This brings us to the instant dispute.

B.

In August 2018, a grand jury indicted Perez-Paz on one count of illegal reentry after deportation subsequent to a conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a), (b)(2). Perez-Paz moved to dismiss the indictment, challenging the constitutionality of § 1326. He argued, in relevant part, that using an administrative removal order as an element of a criminal offense violated the Fifth and Sixth Amendments. The district court denied Perez-Paz's motion, reasoning that the availability of judicial review under § 1326(d) rendered the use of the administrative removal order constitutional. Perez-Paz subsequently pleaded guilty to the indictment without a plea agreement.

Following Perez-Paz's guilty plea, the U.S. Probation Office calculated a criminal history category of three based on the following convictions: the 2011 Virginia convictions

4

for driving while intoxicated and driving with no driver's license, the 2012 federal conviction for illegal reentry, and the 2018 Virginia convictions for a hit and run and driving with no driver's license. The criminal history category calculation did not include the following convictions due to their age: the 1990 and 1993 California drug convictions, the 1999 South Carolina convictions for driving under the influence and driving with no driver's license, and the 2001 South Carolina conviction for driving with no driver's license. Based in part on Perez-Paz's criminal history category, the Probation Office calculated a Guidelines range of eighteen to twenty-four months.

At sentencing, the government recommended an upward variance based on the inadequacy of Perez-Paz's criminal history category. Perez-Paz made several mitigation arguments, four of which are relevant here. First, he explained that he had returned to the United States following his most recent deportation in 2013 because of gang violence directed at his family, including the murder of his brother. He also sought to reunite with his wife of twenty-four years and his young child.

Second, Perez-Paz explained that his wife and child were fully dependent upon him because his wife had severe medical issues. Since Perez-Paz's arrest, his wife had been forced to rely on disability payments and charity.

Third, Perez-Paz provided data from the U.S. Sentencing Commission indicating that an above-range sentence would introduce unwarranted disparity. Perez-Paz's data set included defendants with a prior felony illegal reentry and a subsequent felony conviction following deportation, and who similarly had a Guidelines range of eighteen to twenty-four months with a criminal history category of three. The majority of these defendants

received sentences below the Guidelines range, while fewer than 1% received above-range sentences.

Fourth, Perez-Paz contested the government's assertion that his two California drug convictions should result in an upward variance. Rather, Perez-Paz asserted that his criminal history category properly excluded those convictions due to their age—twenty-eight and thirty years old, respectively.

At the sentencing hearing, the district court granted the government's motion for an upward variance and ultimately sentenced Perez-Paz to forty-two months of incarceration. The district court referenced the government's argument that Perez-Paz's criminal history category did not sufficiently account for his full criminal history. The court particularly emphasized Perez-Paz's recidivism, noting that "neither prior criminal convictions, nor deportation orders, have deterred the defendant from violating the immigration or criminal laws of the United States." J.A. 225–26.

Perez-Paz timely appeals. He argues both that his statute of conviction, § 1326, is facially unconstitutional, and that the district court's sentence was procedurally unreasonable.

II.

We review questions of law de novo. *See United States v. Peterson*, 945 F.3d 144, 154 (4th Cir. 2019). We review sentences for reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

III.

A.

We first address Perez-Paz's constitutional challenges to § 1326. Section 1326 imposes criminal penalties on "any alien who . . . has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding" and later enters or is found in the United States without permission of the United States Attorney General. 8 U.S.C. § 1326(a). Perez-Paz makes two related but distinct constitutional arguments.[*] First, he contends that § 1326 violates the Fifth and Sixth Amendment right to a jury by splitting factual findings between the jury and an administrative agency. Second, he argues that § 1326 violates the Fifth Amendment right to due process by incorporating, as an element of the crime, a discretionary decision by an executive officer.

1.

Taken together, the Fifth Amendment and the Sixth Amendment "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi v. New Jersey*, 530 U.S. 466, 476–77 (2000) (alteration in original) (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)). Perez-Paz argues that when a statute includes an administrative

---

[*] The government preliminarily argues that Perez-Paz waived his constitutional claims by pleading guilty. To the contrary, a guilty plea does not "bar[] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." *Class v. United States*, 138 S. Ct. 798, 803 (2018).

removal order as an element of the crime, that statute necessarily incorporates the facts supporting the removal order. As such, Perez-Paz asserts that § 1326 unconstitutionally allows an agency, rather than a jury, to establish an element of the crime.

We disagree with the premise of Perez-Paz's argument. Section 1326 does not incorporate the facts supporting the underlying removal order. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). In *Mendoza-Lopez*, the Supreme Court held that a defendant generally may not relitigate the validity of an underlying removal order in a § 1326 prosecution because § 1326 does not incorporate, as an element, a "lawful" removal order. *See id.* at 834–35, 838–39 (holding that a defendant may only collaterally attack the underlying removal order in a § 1326 prosecution when that order was "fundamentally unfair" and the defendant was deprived of meaningful judicial review); *see also* 8 U.S.C. § 1326(d) (codifying *Mendoza-Lopez* by providing requirements for collateral attack of an underlying removal order in § 1326 proceedings). Perez-Paz seizes on a footnote in *Mendoza-Lopez* stating that "the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling" and "[u]nder different circumstances, the propriety of using of an administrative ruling in such a way remains open to question." *Mendoza-Lopez*, 481 U.S. at 838 n.15 (citing *United States v. Spector*, 343 U.S. 169, 179 (1952) (Jackson, J., dissenting)). But we are not presented with "different circumstances" than those in *Mendoza-Lopez*. We are presented with the exact same circumstances—a § 1326 prosecution premised on a prior removal order.

Perez-Paz may proffer different arguments, but *Mendoza-Lopez* remains binding: § 1326 does not incorporate, as an element, the facts supporting the underlying removal

8

order. *See id.* at 837–39. Accordingly, those facts need not be found beyond a reasonable doubt by a jury. *Cf. Apprendi*, 530 U.S. at 476–77 (requiring any fact that is an element of the crime to be found by a jury). We therefore reject Perez-Paz's argument that § 1326 violates the Fifth and Sixth Amendment right to a jury.

2.

Perez-Paz also argues that § 1326 violates the Fifth Amendment right to due process because it allows reliance on a discretionary decision by an executive officer. But the Supreme Court has sanctioned such reliance in the context of § 1326.

*Mendoza-Lopez* recognized the due process rights at stake and imposed requirements to protect those rights. The Court expressly stated that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." 481 U.S. at 837–38 (emphasis in original). In the context of a § 1326 prosecution, a defendant must be given the opportunity for judicial review of his removal proceeding. *See id.* at 838–39. When such opportunity for judicial review was not initially provided, a subsequent § 1326 proceeding must do so. *See id.*

In 1996, Congress passed § 1326(d) with the express purpose of codifying *Mendoza-Lopez*'s judicial review requirements. *See United States v. Moreno-Tapia*, 848 F.3d 162, 165 (4th Cir. 2017). Section 1326(d) allows a defendant to collaterally attack an underlying removal order in a § 1326 proceeding if (1) the defendant "exhausted any administrative remedies . . . to seek relief against the order," (2) the underlying removal proceedings

"improperly deprived the alien of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d).

We see no error in Congress's codification of *Mendoza-Lopez*.  Section 1326(d) ensures that judicial review of the underlying administrative removal order is available—in some form—in every § 1326 prosecution.  *See Moreno-Tapia*, 848 F.3d at 166 (explaining that § 1326 protects against "procedural irregularities in immigration proceedings that may insulate the resulting orders from judicial review, making it fundamentally unfair to rely on those orders in later criminal prosecutions").  As the Supreme Court held in *Mendoza-Lopez*, such judicial review negates the risk of premising criminality on unfettered executive discretion.  We conclude that given the availability of judicial review, § 1326 does not violate the right to due process.

Accordingly, Perez-Paz's constitutional claims fail.

B.

Second, we consider Perez-Paz's argument that his sentence is procedurally unreasonable because the district court did not address his non-frivolous mitigation arguments.  A sentence is procedurally unreasonable when the district court fails to "place on the record an 'individualized assessment' based on the particular facts of the case before it."  *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (quoting *Gall*, 552 U.S. at 50).

We have repeatedly emphasized that in individually assessing a case, the district court "must address or consider all non-frivolous reasons presented for imposing a different

10

sentence and explain why [it] has rejected those arguments." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019), *cert. denied,* 140 S. Ct. 206 (2019). The district court must do so "not merely in passing or after the fact, but as part of its analysis of the statutory factors and in response to defense counsel's arguments for a downward departure." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017) (quoting *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010)). Of course, "[t]he adequacy of the sentencing court's explanation depends on the complexity of each case." *Id.* at 518.

Perez-Paz asserts that the district court failed to address four of his arguments in support of a lower sentence. We agree with Perez-Paz regarding two of these four arguments. First, Perez-Paz contends that that his twenty-eight- and thirty-year-old California drug convictions should not result in an upward variance. *See, e.g.*, *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1056 (9th Cir. 2009) (finding abuse of discretion when district court placed too much weight on stale conviction). Perez-Paz argues that the two drug convictions were properly excluded from his criminal history category due to their age, and the court should not now consider them because he has not since repeated any drug-related conduct. We conclude that the district court failed to consider this argument because "in explaining its sentence, the district court neither acknowledged . . . nor provided *any* explanation for rejecting it." *See United States v. Webb*, 965 F.3d 262, 270 (4th Cir. 2020) (emphasis added).

The district court spent no small amount of time discussing Perez-Paz's "extensive criminal history." J.A. 224. The court emphasized Perez-Paz's prior removal orders and illegal reentry conviction. The court also noted Perez-Paz's additional prior convictions

and mentioned that Perez-Paz did not receive criminal history points for six of those convictions—including the two drug convictions. *See* J.A. 225. Despite this discussion, at no point did the court acknowledge Perez-Paz's argument that the two drug convictions were stale and thus properly excluded.

It may be true that the district court did not rely on Perez-Paz's drug convictions in upwardly varying. Indeed, the district court ultimately calculated a Guidelines range of thirty-seven to forty-six months despite the government's suggestion that counting the two drug convictions would lead to a Guidelines range of forty-six to fifty-seven months. But "an appellate court may not guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence." *Carter*, 564 F.3d at 329–30. Perez-Paz raised a non-frivolous argument in favor of a lower sentence and the district court failed to address it. This is procedurally unreasonable.

Second, Perez-Paz asserts that the district court failed to consider his sentencing-disparity argument. *See, e.g.*, *Webb*, 965 F.3d at 270 (finding procedural error in part because district court failed to acknowledge defendant's argument regarding sentencing disparities with his co-conspirators). The government responds that, when defense counsel discussed sentencing-disparity statistics at the hearing, the district court interrupted with questions that made clear its rejection of Perez-Paz's sentencing-disparity argument. We disagree.

It is true that our procedural-reasonableness review considers the "full context, including the give-and-take of a sentencing hearing." *United States v. Nance*, 957 F.3d

12

204, 213 (4th Cir. 2020). For example, in *Webb*, we held that the district court made it "patently obvious" that it specifically rejected defendant's acceptance-of-responsibility mitigation argument, *Webb*, 965 F.3d at 270 (quoting *Blue*, 877 F.3d at 521), because the court "directly engaged with that argument at sentencing . . . and explain[ed] its view that [the defendant] had shown not a flicker of acceptance of responsibility," *id.* (cleaned up).

The district court here provided no such patent clarity. The exchange to which the government points is as follows:

> THE COURT: Did each of these individuals have an identical criminal history to your defendant?
>
> [DEFENSE COUNSEL]: As far as the guidelines were concerned, they were all in Category III, Your Honor. Criminal History Category III.
>
> THE COURT: But did they have an identical criminal history to your defendant? The same number of convictions—
>
> [DEFENSE COUNSEL]: No, I don't think any two people have an identical criminal history.
>
> THE COURT: Okay. That's fair.
>
> [DEFENSE COUNSEL]: The guidelines say similar record. Not identical.
>
> THE COURT: Okay.

J.A. 213. This exchange is hardly conclusive as to whether *or* why the district court rejected Perez-Paz's argument. In theory, we could assume that the district court rejected Perez-Paz's argument because the court believed that Perez-Paz's criminal history category was inadequate, and comparing Perez-Paz to defendants with similar criminal history categories would thus be improper. But the district court never stated as such, explicitly or implicitly. Unlike in *Webb*, the district court did not directly engage with the sentencing-

disparity argument in any dispositive way. We cannot substitute our own "guess at the district court's rationale." *Carter*, 564 F.3d at 329. The district court's failure to address this non-frivolous argument hinders our ability to provide "meaningful appellate review" and is therefore procedurally unreasonable. *Id*. at 330.

We reach a different conclusion regarding Perez-Paz's remaining two arguments. First, Perez-Paz claims that the district court ignored his argument that he returned to the United States only because a gang had murdered his brother and scattered his family. In explaining why it chose to upwardly vary, the district court acknowledged that Perez-Paz "was raised in an impoverished area of Santiago, Honduras, which has a [high] crime rate," but noted that "while other members of his family have been the victims of gang violence, none has been directed toward [Perez-Paz] himself." J.A. 226. This explanation, "although somewhat brief, 'outlined [Perez-Paz's] particular history and characteristics not merely in passing or after the fact.'" *See Lynn*, 592 F.3d at 584 (quoting *United States v. Johnson*, 587 F.3d 625, 639 (4th Cir. 2009)). This brief consideration suffices given the simplicity of the argument. *See United States v. Lozano*, 962 F.3d 773, 782 (4th Cir. 2020); *Blue*, 877 F.3d at 518.

Second, Perez-Paz claims that the district court ignored his argument that he was the sole provider for his wife—who had serious health problems—and his child. In its analysis of the sentencing factors, the district court recognized that Perez-Paz's wife and child "are dependent upon him for a major portion of their support." J.A. 226. Again, this brief consideration suffices here in light of the simplicity of the argument. *See Lozano*, 962 F.3d at 782; *Blue*, 877 F.3d at 518.

14

Accordingly, the district court's sentence was procedurally unreasonable to the extent that it failed to consider Perez-Paz's argument regarding his stale drug convictions and his argument regarding sentencing disparities. For that reason, we vacate and remand to the district court for resentencing.

## IV.

Perez-Paz's constitutional attacks on § 1326 are misplaced not for lack of reason, but for the existence of binding Supreme Court precedent. We leave for another day the question of whether premising criminality on an administrative order is always appropriate. As for Perez-Paz's procedural unreasonableness claim, we will continue to require district courts to acknowledge and assess all non-frivolous arguments. For the foregoing reasons, the district court's sentence is

*VACATED AND REMANDED*.