**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-4250**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TALTEN DOMINIC HALL, JR.,

Defendant – Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  Gina M. Groh, District Judge.  (3:23-cr-00049-GMG-RWT-1)

Argued:  December 10, 2025                    Decided:  February 19, 2026

Before RUSHING and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Nicholas Joseph Compton, OFFICE OF THE FEDERAL DEFENDER, Martinsburg, Virginia, for Appellant.  Eleanor F. Hurney, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, Virginia, for Appellee.  **ON BRIEF:**  William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Talten Hall, Jr., pled guilty, pursuant to a written plea agreement, to one count of possession of a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Hall's counsel and the government both recommended that Hall be sentenced within the applicable sentencing Guidelines range to sixty months incarceration. The District Court imposed a sentence of eighty-four months, two years above the Guidelines range, to be followed by five years of supervised release. Hall now appeals the sentence on the basis that it was procedurally unreasonable. For the following reasons, we affirm.

I.

On September 27, 2022, Appellant Talten Hall, Jr., and his girlfriend Teresa Bernhardt went to dinner in Winchester, Virginia. The couple took Bernhardt's car. As they were leaving home, Bernhardt placed her two firearms—a Glock and a Ruger—in the vehicle. After dinner, the couple went to the Lust Gentlemen's Club in Martinsburg, West Virginia, to meet a mutual friend who worked at the club.

While at the club, the couple began chatting with Tianna Green, a Lust employee. Hall, Bernhardt, and Green began smoking marijuana together at the club. Near closing time, Green advised Hall and Bernhardt that she was out of marijuana. Hall told Green to meet him outside of the club and he would give her some of his marijuana. Hall exited the club shortly before the end of Green's shift and walked towards Bernhardt's car.

2

As Hall walked towards her car, one of the club's security guards, Luther Sullivan, slowly drove his white pickup truck towards Hall. The pickup truck had no markings on it to indicate it was a police vehicle or a security vehicle for the club. Sullivan flashed his high beams at Hall and revved his engine. Fearing for his safety, Hall grabbed Bernhardt's Ruger out of her vehicle and began walking away from the pickup truck.[1] The pickup truck began following Hall around the parking lot. Sullivan requested assistance from club security.

Eventually, Green exited the club, escorted by club security, a bouncer named William Hyatt, who ostensibly exited the club to assist Sullivan. Hall approached Green, slid a small amount of marijuana into her purse, and kissed her on the cheek. As he did so, the truck sped towards Hall. Sullivan exited the truck, shouted something like "That's him," and Hyatt responded something akin to "Get him." At that time, Hyatt fired his gun at Hall. Hall fired two shots in response to Hyatt's shot.[2] After the shots were fired, Hyatt told Hall to leave the club area or risk being shot at again. Hall then left in Bernhardt's vehicle.

As Hall drove away from the club, he called 911 to report what happened. The 911 operator left him on hold for several minutes and so Hall disconnected the call. Hall drove to his friend Leron Twyman's residence in Martinsburg, West Virginia. Hall left the two firearms with Twyman and then drove to the Microtel in Winchester, Virginia, where

---

[1] Sullivan disagrees with this characterization and contends that he was outside in his pickup truck when he saw Hall walk to a vehicle, remove a firearm, and place it in his waistband, before walking to the back of the club.

[2] The parties disagree as to who fired first.

3

Bernhardt resided. Ultimately, a friend picked Hall up at the Microtel and drove him to her residence in Edinburg, Virginia. Law enforcement eventually located Hall at the Edinburg residence later that day and arrested him without incident. Upon his arrest, Hall advised the officer that the firearms were at Twyman's residence in Martinsburg. Law enforcement officials thereafter arranged a meeting with Twyman and recovered the firearms from him that same day.

On May 16, 2023, a grand jury sitting in the Northern District of West Virginia returned a two-count indictment charging Hall with (1) possession of firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and (2) unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(8). On July 13, 2023, police arrested Hall. Hall has remained in continuous federal incarceration since July 13, 2023, serving most of his time in federal pre-trial custody at the state-run Eastern Regional Jail (ERJ) in Martinsburg, West Virginia.

On December 11, 2023, Hall entered a guilty plea, pursuant to a written plea agreement, to Count One of the indictment. The United States Probation Office then prepared a presentence report. In the report, the Probation Office calculated Hall's Guidelines range to be sixty months of incarceration. Hall's counsel submitted a Sentencing Memorandum to the district court requesting a sentence of sixty months incarceration and no more than five years supervised release. The United States recommended the same sentence. The District Court imposed an above-Guidelines sentence of eighty-four months to be followed by five years of supervised release. Count Two of the indictment was dismissed. This appeal followed.

4

II.

Hall argues that his sentence is procedurally unreasonable because the district court imposed a lengthy sentence without explicitly addressing two of Hall's nonfrivolous mitigation arguments.[3]

"We review a district court's sentence for an abuse of discretion." *United States v. Lozano*, 962 F.3d 773, 782 (4th Cir. 2020) (citation modified). A sentence is procedurally unreasonable if the district court commits a "significant procedural error," such as (1) imposing "a sentence based on clearly erroneous facts;" (2) failing to explain the sentence adequately; or (3) failing to address the defendant's nonfrivolous arguments. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed.2d 445 (2007). "A sentence is procedurally unreasonable when the district court fails to 'place on the record an "individualized assessment" based on the particular facts of the case before it.'" *United States v. Perez-Paz*, 3 F.4th 120, 127 (4th Cir. 2021) (quoting *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009)).

We have repeatedly emphasized that in individually assessing a case, the district court "must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why [it] has rejected those arguments." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). The district court must do so "not merely in passing or after

---

[3] Hall's appeal brief also contends that his sentence was substantively unreasonable. However, at oral argument, Hall's counsel disclaimed this argument. As such, we confine our analysis to whether the imposed sentence was procedurally unreasonable.

the fact, but as part of its analysis of the statutory factors and in response to defense counsel's arguments for a downward departure" from the Guidelines. *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017) (quoting *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010)). Of course, "[t]he adequacy of the sentencing court's explanation depends on the complexity of each case." *Id.* at 518.

"[O]ur procedural-reasonableness review considers the 'full context, including the give-and-take of a sentencing hearing.'" *Perez-Paz*, 3 F.4th at 128 (quoting *United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020)); *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006). Moreover, we have held that a district court does not fail to address an argument where a district court makes it "patently obvious" that it specifically rejects a defendant's nonfrivolous mitigation argument because the court "directly engaged with that argument at sentencing" and "explain[ed] its view" for rejecting that argument, "thus allowing us to evaluate the court's reasoning on appeal." *United States v. Webb*, 965 F.3d 262, 271 (4th Cir. 2020); *see also United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) ("[W]e will decline to vacate a sentence when the court's reasoning, although not spelled out, was patently obvious." (citation modified)). We may do so when the context surrounding a district court's explanation "imbue[s] it with enough content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly." *Lewis*, 958 F.3d at 243–44 (alteration in original) (quoting *Montes-Pineda*, 445 F.3d at 381).

"Where a sentencing court hears a defendant's arguments and engages with them at a hearing, we may infer from that discussion that specific attention has been given to those

6

arguments." *Nance*, 957 F.3d at 213. Brief consideration suffices for simple arguments. *Perez-Paz*, 3 F.4th at 129; *Lozano*, 962 F.3d at 782; *Blue*, 877 F.3d at 518. And where a sentence is tailored to address individual characteristics, we may infer consideration of the relevant personal characteristics under § 3553(a). *See Blue*, 877 F.3d at 521. To be clear, we may neither "guess at which arguments the court might have considered [n]or assume that the court 'has silently adopted arguments presented by a party.'" *Nance*, 957 F.3d at 214 (quoting *Carter*, 564 F.3d at 329).

Hall concedes that the district court addressed all mitigation arguments at both Hall's sentencing hearing and in the court's written Statement of Reasons *except* for the following: (1) the nature and circumstances of Hall's pre-trial detention at the ERJ and (2) his efforts at rehabilitation. With regards to the former, Hall contends that the district court failed to address his mitigation argument regarding the poor conditions of pretrial detention—including that Hall contracted COVID-19 and was the victim of an unprovoked attack by a fellow inmate—in assessing Hall's personal history and characteristics. Regarding the latter, Hall completed an hourlong anger management course which speaks to his rehabilitation efforts, and he argues that the district court did not consider these efforts either at the sentencing hearing or in the Statement of Reasons despite sentencing Hall above the Guidelines range and commenting on Hall's anger issues. We consider each mitigation argument in turn.

7

*First*, we find that the district court considered Hall's pre-trial conditions of confinement mitigation argument.[4] At the sentencing hearing, Hall's counsel provided a summary of the poor conditions at ERJ including the assault. *See* J.A. 166–67. The district court replied to say, "I don't understand how Jimmy Lambert was—this Court sentenced him—was able to just walk around the Eastern Regional Jail at his own liberty either." J.A. 000167. Neither party had identified the inmate who committed the assault at the sentencing hearing, though they had included that information in their sentencing briefs. From this, we can infer that the district court read the details of the assault prior to the hearing and engaged with Hall's counsel at the hearing as to Hall's pre-trial conditions of confinement. *See Nance*, 957 F.3d at 213. This consideration suffices.

*Second*, though the district court judge does not explicitly address the hourlong anger management course, it is clear from the record that she considered Hall's anger management issues, found the course insufficient rehabilitation, and provided for sentencing conditions that enabled Hall to receive appropriate treatment for his mental

---

[4] Hall contends that the district court erred by not addressing his pretrial conditions of confinement argument. Although this Court has observed other circuits have held "that extremely harsh conditions of pretrial confinement may be a mitigating circumstance justifying the imposition of a below-guidelines sentence;" we have found that a district court does not abuse its discretion in denying a motion for a downward variance on that basis where the defendant-appellant's pre-trial confinement was not "atypically harsh." *United States v. Quattlebaum*, 283 F. App'x 98, 100 & n.3 (4th Cir. 2008). Similarly, we have suggested that district court judges may consider conditions of a defendant's pre-trial confinement as mitigation arguments if relevant. *Cf. United States v. Peterson*, 782 F. App'x 231, 239 (4th Cir. 2019) (observing that the trial court considered nonfrivolous conditions of confinement arguments). We need not decide whether a district court errs for failing to address a defendant's pre-trial conditions of confinement when raised at sentencing because we find that the lower court adequately addressed the argument in this case.

health including to improve his anger management skills. "Although . . . a low bar," we require the record "reflect some affirmation that the court considered the arguments in mitigation made by a defendant." *United States v. Patterson*, 957 F.3d 426, 440 (4th Cir. 2020). At the hearing and in the Statement of Reasons, the lower court identified that Hall's poor anger management skills meant that "he would likely benefit from a formal assessment or intervention in the area of mental health." J.A. 180 (Hearing Transcript); J.A. 357 (Statement of Reasons). We read this to signify that the district court found the anger management course insufficiently rehabilitative and thus failed to adequately address Hall's mental health needs. We need not vacate a sentence simply because the court did not spell out what the context of its explanation made patently obvious: namely, that an hourlong anger management course was insufficiently rehabilitative to warrant a lower sentence.[5] *See Montes-Pineda*, 445 F.3d at 381. Instead, the court provided Hall with the opportunity for formal assessment or intervention in the area of mental health.

"[W]e look to whether the sentencing court has said 'enough to satisfy' us that the court 'has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision-making authority." *United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020) (alteration in original) (quoting *Blue*, 877 F.3d at 518). The district court's

---

[5] Appellate judges have mused whether district courts could adopt rules to simplify these appeals. *See, e.g.*, Oral Arg. at 20:25–21:05. For example, any uncertainty as to the adequacy of the district court's explanation could have been ameliorated by the court's inclusion of a simple question to counsel at the end of the sentencing hearing: "Do you have any arguments that I have not addressed?" This would allow defense counsel to raise any missed arguments and, alternatively, would provide the reviewing court an avenue to determine whether any mitigation arguments have been waived.

9

engagement with the parties at the sentencing hearing, well-articulated Statement of Reasons, and thorough record before the Court clearly meet this standard. There is no evidence in the record that the district court passively heard the parties' arguments and appeared to ignore them. Rather, the court entertained arguments from both sides and engaged counsel as to the arguments' merits. The district court ultimately imposed an upward variance based on Hall's pronounced history of arrests and convictions for crimes of violence and the nature and circumstances of the offense, including that Hall discharged his weapon twice during the offense conduct. This Court has never established a brightline rule that a district court must explicitly and unambiguously check off each nonfrivolous argument where it is contextually clear that the district court has engaged with it. We decline to create such a rule today. Given the district court's care in explaining Hall's sentence, we hold that his sentence is not procedurally unreasonable.

III.

For the foregoing reasons, the judgment of the district court is hereby

*AFFIRMED.*

10