**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 18-4446**

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

      v.

LEMONT JERRONE WEBB, a/k/a L. Dawg, a/k/a Mont,

                Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, Chief District Judge.  (5:15-cr-00172-BO-1)

Submitted:  June 1, 2020                            Decided:  July 13, 2020

Before GREGORY, Chief Judge, WYNN and HARRIS, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Wynn joined.

Laura E. Beaver, THE BEAVER LAW FIRM, Raleigh, North Carolina, for Appellant. Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Lucy Partain Brown, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

A jury convicted appellant Lemont Jerrone Webb of multiple criminal offenses related to drug trafficking and money laundering, and the district court sentenced him to life imprisonment. On appeal, Webb raises several challenges to his conviction, which we find unavailing. We do, however, agree with Webb that his sentence is procedurally unreasonable, because the district court failed to address his non-frivolous mitigating arguments against a life sentence. Accordingly, we affirm Webb's conviction but vacate his sentence and remand to the district court for resentencing.

## I.

Lemont Jerrone Webb and several other defendants were indicted on multiple drug-trafficking and money-laundering counts. Specifically, Webb was charged in a superseding indictment with conspiracy to distribute and possess with the intent to distribute cocaine and crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1); possession with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and engaging in monetary transactions with property derived from unlawful activity, in violation of 18 U.S.C. § 1957. Webb and his co-defendants were charged with running a large-scale, retail-style drug-distribution organization, and with committing money laundering by using the proceeds of that organization to purchase real property and vehicles and by making certain cash deposits into bank accounts.

2

Webb was tried together with his father Harry Myles, Sr., a co-defendant charged with money-laundering offenses. The evidence at trial established that over a period of about a decade – starting in roughly 2003 and ending when Webb was arrested in 2015 – Webb conspired with others to possess and distribute cocaine and crack cocaine from trailers in Godwin, North Carolina. Multiple co-conspirators testified that they were paid to sell drugs from the trailers to a high volume of customers. Law enforcement officers testified about controlled purchases they made from the trailers, evidence they discovered in executing search warrants for the properties, and surveillance they had conducted. The jury also heard testimony that Webb, after he was arrested and waived his *Miranda* rights, admitted to law enforcement officers that he had sold crack cocaine until 2012, when he allegedly "got out of the business," J.A. 954, and confirmed his voice on incriminating wiretap recordings.

With respect to money laundering, the government introduced testimony related to cash purchases by Webb and Myles of numerous parcels of real property and automobiles. The government's evidence showed that some of the property in question, though in Myles's name, had been paid for in cash by Webb. In his defense, Webb called several witnesses to show that he had established a lawful towing business in 2013, from which he derived legitimate income.

The jury convicted Webb of drug conspiracy, possession with intent to distribute crack cocaine, money-laundering conspiracy, and some but not all of the substantive money-laundering counts with which he was charged. The district court sentenced Webb to life imprisonment, and Webb timely appealed.

3

## II.

On appeal, Webb raises three challenges to his conviction, and also argues that his life sentence is procedurally and substantively unreasonable. We begin with Webb's arguments concerning his conviction and turn next to Webb's sentence, providing additional factual context as necessary.

## A.

### 1.

In his first challenge to his conviction, Webb argues that the district court erred in admitting evidence of his prior state-court convictions for drug-related offenses. Specifically, the district court allowed the government to introduce at trial – over Webb's objection – evidence that Webb pleaded guilty in state court in 2012 to charges that in 2009 and 2010, he sold cocaine, possessed cocaine with the intent to distribute it, and maintained a dwelling for the purpose of selling cocaine. According to Webb, that evidence was not admissible under Rule 404(b) of the Federal Rules of Evidence. We review a district court's evidentiary rulings for abuse of discretion, *see United States v. Bush*, 944 F.3d 189, 194–95 (4th Cir. 2019), and find no such abuse here.

"Federal Rule of Evidence 404(b)(1) prohibits evidence of a crime, wrong, or other act from being used to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *United States v. Sutherland*, 921 F.3d 421, 429 (4th Cir. 2019) (internal quotation marks omitted). But Rule 404(b) "does not affect the admission of evidence that is intrinsic to the alleged crime." *Id.* at 430

4

(internal quotation marks omitted). "[E]vidence of other bad acts is intrinsic if, among other things, it involves the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." *Id.* (citation and internal quotation marks omitted). "[W]here testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996).

This is just such a case. The state convictions at issue were for possessing and intending to distribute cocaine in the same place and during the same time period as the drug-trafficking conspiracy – a conspiracy to distribute cocaine as well as crack cocaine – charged in the federal indictment. As we recently held in *United States v. Bush*, a district court does not abuse its discretion by treating such convictions as intrinsic to a federal drug conspiracy charge under Rule 404(b). *See* 944 F.3d at 196–97 (finding state conviction record "intrinsic" where it proves "the distribution of the same controlled substance [], in the same city [], during the same period of time" charged in the federal case). Given the temporal and substantive overlap between Webb's state convictions and the federal conspiracy charge, the district court reasonably could find that the state convictions were introduced as direct proof that Webb engaged in the charged conspiracy, and not to support an impermissible inference that Webb's prior offenses revealed a "propensity" to engage in drug-related crimes. *See United States v. Brizuela*, No. 19-4656, --- F.3d ----, 2020 WL 3393440, at *6 (4th Cir. June 19, 2020) (distinguishing forbidden "propensity" evidence

from intrinsic evidence).[1]  Accordingly, we find no abuse of discretion in the introduction of the state convictions in question.

2.

Webb's second challenge to his conviction concerns a statement by the prosecutor during closing arguments to the jury.  At trial, Janice Smith, a cooperating witness who was part of the drug conspiracy, testified about overhearing an argument between Webb and Myles over which of them owned the property on which a trailer sat.  The argument broke out in the trailer after Smith – at Webb's direction – attempted to prevent Myles from bringing a woman into a back room already occupied by Webb and a different woman.  In recounting, during his closing argument, Smith's testimony about the dispute between Webb and Myles, the prosecutor elaborated:  "Now, [Webb] was actually in the back room with another woman – not his wife, . . . [who is] . . . in the back of the court[room] . . . ."  J.A. 1051.  Although Webb did not object at the time, he now argues on appeal that the government improperly accused him of sexual infidelity and thus denied him a fair trial.  We find no reversible error.

---

[1] To the extent Webb argues that the district court should have excluded evidence of his state convictions under Rule 403 as more prejudicial than probative, we again disagree.  *See* Fed. R. Evid. 403; *United States v. Sterling*, 860 F.3d 233, 247–48 (4th Cir. 2017) (setting out Rule 403 standard).  Webb's guilty pleas to drug-trafficking activity in 2009 and 2010 were directly relevant to whether he conspired to traffic in crack cocaine during the period charged in the federal indictment, which encompassed those years.  And while the evidence doubtlessly was prejudicial, it was not "unfair[ly]" so within the meaning of Rule 403.  Fed. R. Evid. 403; *United States v. Siegel*, 536 F.3d 306, 319–20 (4th Cir. 2008).

6

"[G]reat latitude is accorded counsel in presenting closing arguments to a jury," but "the guiding principle is that a prosecutor should not strike 'foul blows.'" *United States v. Ollivierre*, 378 F.3d 412, 418 (4th Cir. 2004), *cert. granted, judgment vacated on other grounds*, 543 U.S. 1112 (2005). "In assessing whether a prosecutor's argument warrants reversal, we apply a two-part test, i.e., (1) whether the argument was improper, and if so, (2) whether it so prejudicially impacted the defendant's substantial rights as to deprive him of a fair trial." *Id.* at 420 (citing *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990)). And here, as Webb concedes, because no objection was lodged at trial, our review is for plain error only, *see id.* at 417–18, and under *United States v. Olano*, 507 U.S. 725 (1993), we may reverse only if any error was plain and affected substantial rights, and a failure to reverse would "seriously affect the fairness, integrity or public reputation of judicial proceedings," *id.* at 732 (internal quotation marks and alteration omitted).

Webb cannot meet that standard here. We may assume that the prosecutor's statement was improper, and plainly so. The government insists that the prosecutor's reference to Webb's alleged marital infidelity was necessary to corroborate Smith's account of the dispute between Webb and his father, but that is a hard argument to follow, particularly because Smith's testimony did not identify the woman on the scene with Webb. And the government offers no theory at all for why it would have been appropriate to further shame Webb by pointing out, to the jury, that his wife was present in the courtroom. There is a difference between justifiably "hard blows" and improper "foul" ones, *Berger v. United States*, 295 U.S. 78, 88 (1935), and this statement seems clearly to cross the line.

7

But a plainly improper statement is not enough to merit reversal on plain-error review. *See Ollivierre*, 378 F.3d at 421–22. Webb also must show, at a minimum, that the statement so "prejudicially affected [his] substantial rights" that it "depriv[ed] him of a fair trial." *Id.* at 421. Here, where the statement in question was fleeting and isolated, and the "competent proof introduced to establish" Webb's guilt was strong, *id.* at 422 (quoting *United States v. Mitchell*, 1 F.3d 235, 241 (4th Cir. 1993)), we do not think Webb can meet that high threshold. *See id.* at 421–22 (discussing factors that guide inquiry). Taken in context and in light of the full range of evidence against Webb, we cannot say that the prosecutor's statement likely misled the jury and affected its verdict. *See id.* at 422. Accordingly, Webb cannot prevail on this claim under plain-error review.

3.

Webb's final argument against his conviction arises under the Double Jeopardy Clause of the Fifth Amendment, which provides that no person may twice be put in jeopardy for the same offense. *See* U.S. Const. amend. V; *Gamble v. United States*, 139 S. Ct. 1960, 1963–64 (2019). According to Webb, that Clause is implicated because he was tried in federal court for the same drug-related offenses for which he already had been tried and convicted in state court – as evidenced by the state-court convictions introduced at his federal trial.

As Webb effectively concedes, however, his federal prosecution would be permissible under the Double Jeopardy Clause's "dual-sovereignty" doctrine, which allows the federal government to bring federal charges even when a state already has prosecuted a defendant for the same conduct. *See Gamble*, 139 S. Ct. at 1964. At the time that Webb

8

filed his brief on appeal, the Supreme Court had before it a case calling into question that doctrine. But the Supreme Court now has reaffirmed the dual-sovereignty doctrine, *see id.*, and thus foreclosed Webb's double jeopardy claim.

**B.**

We turn now to Webb's life sentence, which Webb challenges as both procedurally and substantively unreasonable. We begin, as we must, with procedural reasonableness, *see Gall v. United States*, 552 U.S. 38, 51 (2007), and conclude that Webb's life sentence is procedurally unreasonable because the district court entirely failed to address several non-frivolous arguments for a lower sentence. Accordingly, we vacate Webb's sentence and remand to the district court for resentencing.

1.

We begin with a brief description of Webb's sentencing proceedings. Before Webb's sentencing, Webb's presentence report had recommended a Sentencing Guidelines range of life imprisonment. That recommendation rested on a base offense level of 38 – reflecting the quantities of crack cocaine involved in Webb's offenses – adjusted to an offense level of 43 after the application of several sentencing enhancements. That offense level, in turn, translated to a Sentencing Guidelines range of life imprisonment for all criminal history categories, including Webb's criminal history category of V.

At sentencing, Webb was given a chance to allocute. Webb spoke briefly, using the opportunity to apologize to his family and then to criticize his indictment as "fatally flawed" and move for bond. J.A. 1445–46. When Webb was finished, the district court heard argument on objections to the recommended Guidelines calculations, including

9

Webb's objection to the scoring of his criminal history. The government conceded that Webb's criminal history category should be lowered from V to IV, but the parties agreed that this change would not affect the Guidelines range, given Webb's offense level. The court concluded this portion of the hearing with a finding that Webb had an offense level of 43 and a criminal history category of IV, resulting in a Guidelines sentencing range of life imprisonment.

Webb's counsel then turned to the heart of his argument: that the recommended life sentence was longer than necessary in light of the factors set out in 18 U.S.C. § 3553(a). He began by emphasizing one important distinction between Webb and others involved in the case: Since January of 2013, Webb had attempted to change his conduct and "do something different," J.A. 1453, devoting substantial time to a lawful towing business and towing cars on almost a daily basis from 2013 through his arrest in 2015. Second, Webb's counsel pointed to the sentences given to several of Webb's co-conspirators – including some who were "two or three rungs up the ladder," J.A. 1454, in terms of their leadership roles in the conspiracy – all of which were significantly lower than Webb's recommended life sentence. That disparity, counsel argued, indicated that the sentencing purposes of § 3553(a) could be achieved by a much lower sentence in Webb's case, as well.

Moreover, counsel continued, Webb was 44 at the time of sentencing, so that a 20-year sentence would detain him until he was in his 60s and thus unlikely to reoffend. Such a sentence, counsel argued, would be sufficient to reflect the seriousness of Webb's offenses and to protect the public – "[I]s there any inclination that if he's out of jail in his 60s, that he's some danger to the public?" – while still giving Webb "some hope at the end

of the tunnel." J.A. 1455. And finally, counsel concluded, Webb had "conducted himself professionally . . . throughout the proceedings" and "accept[ed] the seriousness of what's going on." J.A. 1456.

In response, the district court directly addressed counsel's description of Webb's comportment: "His allocution . . . undercuts much of what you said here today. . . . [H]e disagrees with the fact of his conviction and he's hostile to that. I don't see a flicker of acceptance of responsibility . . . ." J.A. 1456. The court then went on to hear from the government, which argued for the recommended life sentence and emphasized the negative effects of Webb's decade-long drug conspiracy on his community. The government also responded to some of Webb's arguments for a lower sentence: Because Webb had delegated to others in the course of committing his offenses, even advanced age upon release from prison might not prevent him from reoffending – "What's to say that he can't do that [at] 70?" J.A. 1459. And as to Webb's towing business, the government acknowledged Webb's efforts but emphasized that he had returned to selling drugs before his arrest.

The court then proceeded directly to imposition of a life sentence. The entirety of its explanation was as follows:

> Well, my opinion is that the guidelines adequately represent the requirements of 3553(a) in this case and as the government has pointed out, this was a long, extensive, and pervasive drug conspiracy that profoundly impacted on a community and was a cancer eating away at the fabric of society, it was destroying many, many lives, he profited from it during its entire course. He made an attempt, both in the real practice of the crime and here in court to avoid accountability and to avoid responsibility. And the factors that are weighed under 3553(a) suggests that a sentence of life is an appropriate guideline and it comes within the heartland of that sentence. And that there

11

is, really is no other alternative sentence that would protect the community and adequately punish him for the crimes that he committed.

J.A. 1461.[2]

2.

Webb argues that his life sentence is procedurally unreasonable because the district court did not address his non-frivolous arguments for a lower sentence and thus failed to put on the record the requisite "individualized assessment" of his case. *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (quoting *Gall*, 552 U.S. at 50). We review a district court's sentence for abuse of discretion, *see United States v. Provance*, 944 F.3d 213, 217 (4th Cir. 2019), and we agree with Webb that his life sentence is procedurally unreasonable.

We review all criminal sentences for reasonableness, *see Gall*, 552 U.S. at 46, beginning with procedural reasonableness and moving on to substantive reasonableness only if there are no procedural errors, *see id.* at 51; *Provance*, 944 F.3d at 215. One of the entailments of procedural reasonableness is that a district court "place on the record an individualized assessment based on the particular facts of the case before it." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (internal quotation marks omitted). And while "[t]he adequacy of the sentencing court's explanation depends on the complexity of each case," the court always must consider a defendant's non-frivolous arguments for a lower

---

[2] The district court's judgment specified the precise breakdown of the sentence imposed: a life sentence on the drug-conspiracy count, a 40-year sentence on the drug-distribution count, 20-year sentences on the money-laundering conspiracy and some of the substantive money-laundering counts, and 10-year sentences on the remaining money-laundering counts, all to run concurrently.

12

sentence. *Blue*, 877 F.3d at 518. It is by now well-established, that is, that a district court "must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why [it] has rejected those arguments." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019), *cert. denied,* 140 S. Ct. 206 (2019) (citations omitted).

The district court failed to do so here. Nowhere in the district court's brief explanation of its sentence, for instance, is there mention of Webb's argument that given his age, a shorter, 20-year sentence would be sufficient to incapacitate him until he is in his 60s and thus less likely to recidivate. There is no question that this is a non-frivolous argument; we have recognized the validity of precisely such arguments in finding a life sentence substantively unreasonable. *See United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) (drawing on "sound empirical evidence" and "studies demonstrat[ing] that the risk of recidivism is inversely related to an inmate's age"). But in explaining its sentence, the district court neither acknowledged this argument nor provided any explanation for rejecting it. The same is true of Webb's arguments regarding sentencing disparities with his co-conspirators – an argument drawn directly from the § 3553(a) factors, *see* 18 U.S.C. § 3553(a)(6) (in imposing sentence, a district court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct") – and his legitimate work history. The district court entirely failed to acknowledge or to explain its assessment of those non-frivolous arguments for a sentence other than life imprisonment.

The government does not dispute that the district court failed to address these non-frivolous mitigating arguments expressly when it explained its sentence. Instead, to the

13

extent it confronts this problem at all, it seems to suggest that we may find the necessary consideration of Webb's arguments not in the district court's explanation for its sentence, but implicit in the "context" of the sentencing hearing. Gov't Br. at 43. We disagree. Although we have looked hard for signs of this consideration, we have come up mostly empty.

It is true that our review of a district court's sentencing explanation is "not limited to the court's statements at the moment it imposes sentence," but extends to the "full context, including the give-and-take of a sentencing hearing." *United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020). And there will be cases in which a sentencing court engages with a defendant's arguments in a way that makes "patently obvious" that it has given specific attention to a non-frivolous argument for a shorter sentence. *Blue*, 877 F.3d at 521; *see also Nance*, 957 F.3d at 213. Indeed, we think this is just such a case when it comes to the argument that Webb's professional comportment and acceptance of responsibility merit a shorter sentence: As described above, the district court directly engaged with that argument at sentencing, contrasting counsel's description of Webb with Webb's own allocution and explaining its view that Webb had shown not "a flicker of acceptance of responsibility." J.A. 1456. That is the kind of give-and-take that may "make[] it patently obvious that the district court found [the defendant's] arguments to be unpersuasive," *Blue*, 877 F.3d at 521 (internal quotation marks omitted), thus allowing us to evaluate the court's reasoning on appeal, *see United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006) (explaining that the "context surrounding a district court's

14

explanation may imbue it with enough content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly").

But that was the district court's only comment during either counsel's argument as to the reasonableness of a life sentence. There is no similar give-and-take with respect to defense counsel's other three arguments for a lower sentence; at no point in the hearing did the court engage either Webb's counsel or the government's lawyer in a discussion of Webb's age and lowered future risk of recidivism, or the potential for a disparity between Webb's life sentence and the lower sentences of his co-conspirators, or the possible mitigating effect of Webb's legitimate work history. It may well be the case, as the government posits, that the district court "listened intently" to Webb's counsel as he made these arguments. Gov't Br. at 43. "But providing the defendant with ample opportunity to present arguments and properly considering those arguments are separate requirements of procedural reasonableness," and we cannot infer the requisite consideration from silence alone, no matter how attentive. *Blue*, 877 F.3d at 520 (citation omitted); *see also Nance*, 957 F.3d at 214.

At bottom, the government is asking us to do what we have said we may not: fill in the gap in the district court's sentencing explanation with a "guess" as to how that court might have assessed the defendant's non-frivolous arguments for something other than a life sentence. *Blue*, 877 F.3d at 521 (quoting *Carter*, 564 F.3d at 329–30). Because the district court did not put on the record its consideration of three of Webb's non-frivolous arguments for a lower sentence or explain its rejection of those arguments, Webb's sentence is procedurally unreasonable. And because we "lack the necessary information

15

to conduct a meaningful appellate review," we cannot evaluate the substantive reasonableness of Webb's life sentence. *Id.* Instead, we vacate Webb's sentence as procedurally unreasonable and remand for resentencing.

## III.

For the reasons given above, we affirm Webb's conviction but vacate his sentence and remand for resentencing consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED* [*]

---

[*] This opinion is published without oral argument pursuant to this Court's Standing Order 20-01, http://www.ca4.uscourts.gov/docs/pdfs/amendedstandingorder20-01.pdf (amended Apr. 7, 2020).