**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4763

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

     v.

ROBERTO HERNANDEZ-ALDAMA, a/k/a Carlos Aldama, a/k/a Milton Ballardo-Ulvera, a/k/a Abel Camps, a/k/a Yonny Campos, a/k/a Felix Garcia-Agosto, a/k/a Jesus Gonzalez, a/k/a Robert Hernandez, a/k/a Carlos Mesa, a/k/a Roberto Olvera, a/k/a Milton Ulvera,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Terrence W. Boyle, District Judge.  (7:18-cr-00124-BO-1; 7:18-cr-00123-BO-3)

Submitted: January 28, 2022                      Decided:  April 14, 2022

Before HARRIS and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

Vacated and remanded for resentencing by unpublished per curiam opinion.

**ON BRIEF:**  Anne Margaret Hayes, Cary, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Evan Rikhye, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:

Appellant Roberto Hernandez-Aldama appeals a 180-month sentence that was imposed after he pleaded guilty to (1) illegal reentry of an alien removed subsequent to a felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(1); and (2) conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841 and 846. On appeal, Hernandez-Aldama asserts the district court procedurally erred by (1) calculating his Sentencing Guidelines offense level based on a finding that his offense involved methamphetamine (actual) rather than a mixture or substance containing methamphetamine, and (2) failing to explain the selected sentence and the reasons for rejecting his arguments in support of lesser sentence. We reject Hernandez-Aldama's Guidelines argument, but we vacate his sentence and remand for resentencing because the district court entirely failed to explain its reasoning.

I.

Hernandez-Aldama was charged by indictment for being found in the United States on or about March 26, 2018, after being deported and without consent of the Attorney General to reapply for admission, in violation of 8 U.S.C. § 1326(a), (b)(1). A law enforcement investigation revealed that Hernandez-Aldama had been previously deported from the United States on a number of occasions. Shortly thereafter, Hernandez-Aldama was charged by superseding indictment with conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841 and

2

846. He pleaded guilty to both offenses without plea agreements. The two cases were consolidated for sentencing.

A probation officer prepared a presentence investigation report (PSR) prior to the sentencing hearing. On the illegal reentry charge, the probation officer calculated a base offense level of 8 and then added a 4-level increase for committing the offense after sustaining a previous illegal reentry conviction and another 4-level increase because Hernandez-Aldama had a felony record prior to his first deportation. Thus, Hernandez-Aldama had an adjusted offense level of 16. On the conspiracy charge, the probation officer attributed to Hernandez-Aldama 12.26 kilograms of cocaine, 472.0 grams of heroin, and 907.2 grams of methamphetamine (actual), for a total converted drug weight of 21,068 kilograms of marijuana and a base offense level of 34.

Based on these determinations, the probation officer arrived at an adjusted offense level of 34 but allowed a 3-level reduction for acceptance of responsibility, for a total offense level of 31. Hernandez-Aldama's criminal history score of 12 placed him in criminal history category V. His Guidelines range sentence was 168 to 210 months' imprisonment.

Hernandez-Aldama filed a written objection to the PSR,[1] asserting that the methamphetamine attributed to him should be treated as a mixture or substance containing

---

[1] Regarding his criminal history, Hernandez-Aldama also objected to the assessment of criminal history points for the three convictions obtained in 2002, 2003, and 2007 on the theory that they occurred more than 10 years before the dates alleged for the charged offenses. These objections are not at issue in this appeal.

methamphetamine, rather than actual methamphetamine, because the government never tested the drug.[2] When calculating a converted drug weight[3] under the Sentencing Guidelines, one gram of methamphetamine (actual) or Ice[4] equates to twenty kilograms of converted drug weight, while a mixture or substance containing methamphetamine equates to just two kilograms of converted drug weight. U.S.S.G. § 2D1.1, n.8(D). Although the probation officer conceded that there was no laboratory report to establish the purity level of the methamphetamine, the probation officer nevertheless rejected Hernandez-Aldama's objection. The officer stated that the substance was designated as Ice, or methamphetamine (actual), based upon two factors: (1) the co-conspirators repeatedly referred to it as Ice; and (2) the substance came from Mexico, and according to the case agent, methamphetamine produced in Mexico is typically of a 95 percent purity level or higher.

During his sentencing hearing, Hernandez-Aldama reiterated the objection that, because the methamphetamine attributed to him was never seized or tested, the district

---

[2] Treating the drugs as "methamphetamine (actual)" instead of a substance containing methamphetamine increased Hernandez-Aldama's Guidelines range from 140–175 months to 168–210 months.

[3] Under the Guidelines, "'converted drug weight' . . . refers to a nominal reference designation that is used as a conversion factor in the Drug Conversion Tables set forth in the Commentary [USSG § 2D1.1 cmt. (n.8(D))] . . . to determine the offense level . . . when combining differing controlled substances." U.S.S.G. § 2D1.1(c), n.K (2018).

[4] The drugs are legally distinct. "'Methamphetamine (actual)' refer[s] to the weight of the [methamphetamine], itself, contained in the mixture or substance." U.S.S.G. § 2D1.1(c), n.B. "'Ice . . . means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c), n.C. However, they have the same converted drug weight. U.S.S.G. § 2D1.1, cmt. n.8(D) (Drug Conversion Tables).

court should default to the lower Guidelines range for a substance containing methamphetamine rather than methamphetamine (actual). The government called a law enforcement officer to testify that (1) methamphetamines from Latin America are mostly Ice; (2) agents recorded a phone call in which Hernandez-Aldama negotiated selling Ice; (3) a confidential informant admitted purchasing Ice from Hernandez-Aldama's co-conspirator; (4) Hernandez-Aldama's co-conspirator stated that Hernandez-Aldama claimed to be able to get ten bags of Ice twice a month; (5) Hernandez-Aldama's co-conspirator admitted that Hernandez-Aldama's group was trafficking Ice; and (6) an associate of Hernandez-Aldama's co-conspirator sold an undercover officer a substance that lab testing confirmed was Ice. The district court overruled Hernandez-Aldama's objection, finding by a preponderance of the evidence that the drugs were "methamphetamine actual." J.A. 54.

Hernandez-Aldama argued for a total sentence of 120 months, asking the district court to consider that all of his prior convictions were more than ten years old, the addition of two criminal history points for being on supervised release at the time of the offense was based on a technicality, the drug quantity attributed to him overrepresented the seriousness of the offense, and he had never previously served a long prison sentence. The government argued for a total sentence of 200 months, asking the court to consider that Hernandez-Aldama's Guidelines were correctly calculated, he had repeatedly returned to the United States to commit crimes, and he is a danger to the public.

The district court originally imposed a sentence of 180 months for each offense. The court did not provide an explanation of the sentence nor respond to any of defense

5

counsel's arguments for a lesser sentence. The district court later went back on the record, apparently in the absence of counsel or Hernandez-Aldama. The court reduced the 180-month sentence on the immigration offense to 120 months to conform with the statutory maximum sentence. The concurrent 180-month sentence on the cocaine conspiracy offense remained intact. Hernandez-Aldama timely appealed, contending that the district court procedurally erred.

## II.

When reviewing whether a district court erred in calculating a defendant's Sentencing Guidelines range, this Court reviews factual findings for clear error and legal conclusions de novo. *United States v. Shephard*, 892 F.3d 666, 670 (4th Cir. 2018). "[C]lear error occurs when a district court's factual findings are against the clear weight of the evidence considered as a whole." *United States v. Martinez-Melgar*, 591 F.3d 733, 738 (4th Cir. 2010) (internal quotation marks omitted).

At sentencing, the government has the burden of proving uncharged conduct by a preponderance of the evidence. *United States v. Grubbs*, 585 F.3d 793, 798–99 (4th Cir. 2009); *see also Morelos v. United States*, 709 F.3d 1246, 1251 (8th Cir. 2013) ("The government, for sentencing purposes, bears the burden to prove drug type by a preponderance of the evidence." (citation omitted)). In evaluating the evidence, the district court "may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its

6

accuracy." *United States v. Williamson*, 953 F.3d 264, 273 (4th Cir. 2020) (internal quotation marks omitted), *cert. denied*, 141 S. Ct. 638 (2020).

III.

Hernandez-Aldama challenges his sentence on two grounds. He contends that the district court procedurally erred by (1) calculating his Guidelines offense level based on a finding that his offense involved methamphetamine (actual), rather than a mixture or substance containing methamphetamine, and (2) failing to explain its selected sentence and the reasons for rejecting his arguments in support of a shorter sentence. We disagree with his first argument, but accept his second.

A.

Hernandez-Aldama contends that the district court should only have attributed to him a substance containing methamphetamine. He argues that during his sentencing hearing, the government offered no evidence about the drugs being methamphetamine (actual), but instead offered testimony that the drugs were Ice. The record reflects that the government and district court used the terms "methamphetamine (actual)" and "Ice" interchangeably. While the drugs are legally distinct, methamphetamine (actual) and Ice have the same converted drug weight. U.S.S.G. § 2D1.1, cmt. n.8(D) (Drug Conversion Tables). So, any imprecise language the government or district court used had no impact on the converted drug weight or Hernandez-Aldama's offense level. Thus, we reject this argument.

7

Hernandez-Aldama next argues that there was insufficient evidence to support a finding that the methamphetamine was Ice because the methamphetamine was never seized or tested. We reject this argument, as well. In order to establish the converted drug weight here, all the government had to prove was that the methamphetamine in question was Ice, meaning "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c), n.C. After this case was initially calendared for oral argument, this Court expounded on the type of evidence required to establish that a conspiracy involved Ice. *See United States v. Williams*, 19 F.4th 374, 379–84 (4th Cir. 2021). In *Williams*, the Court held that drugs need not necessarily be seized and tested to prove they are Ice—even though such tests may provide "the best evidence" of the substance's nature. *Id.* at 380. Instead, we held "the district court must have latitude to consider whatever reliable evidence is available to make its 80% purity determination." *Id.* The district court can consider, for example, "evidence of a drug's source, price and appearance as well as statements or testimony by co-conspirators, users or dealers." *Id.* "However, while such evidence may be used, it must be sufficiently reliable and specific that it actually supports the government's position that the drug's purity is 80% or above." *Id.*

Under the standard set forth in *Williams*, the evidence here was sufficient for the district court to find by a preponderance of the evidence that Hernandez-Aldama's methamphetamine was Ice. Like in *Williams*, the evidence presented to the district court included statements from co-conspirators that the drugs were Ice and evidence about the drugs trafficked in the region. *Id.* at 380–81. The government also submitted evidence

that Hernandez-Aldama himself referred to the drugs as Ice. Thus, the district court's determination that the drugs were Ice was not clearly erroneous. We therefore affirm the district court's rejection of Hernandez-Aldama's argument that the Guidelines for a substance containing methamphetamine should apply.

B.

Hernandez-Aldama next argues that the district court erred in failing to explain the selected sentence and its reasons for rejecting Hernandez-Aldama's arguments in support of a lesser sentence. We agree with this argument.

"When rendering a sentence, the district court must make an individualized assessment based on the facts presented and must state in open court the particular reasons supporting its chosen sentence." *United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019) (internal quotation marks and citation omitted). The court also "must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

Here, the district court did not explain its reasons for imposing the selected sentence or explain why it rejected Hernandez-Aldama's nonfrivolous arguments in support of a lesser sentence. The entirety of the district court's comments are as follows:

> All right. The two cases, Count I of 124 and Count I of 123, a sentence of 180 months concurrent in each case is imposed. Supervised release of three years on Count I in 124, and five years on Count I in 123 are imposed. He's not to violate any federal, state, or local law. I won't make a recommendation

9

as to his location. He is given credit for time served. And he can appeal that to the Court of Appeals.

J.A. 62. And when the government asked the district court to "state if there was any miscalculation, that this was a sufficient sentence in the alternative," the court said "I'll make that finding, that if the Guidelines aren't adequately developed, I would have made a variance sentence of 180 months as I think under 3553(a) it's essential and appropriate and consistent with the sentencing goals of the Statute and the Supreme Court." J.A. at 62–63. The district court did not provide any further explanation. We find that the district court clearly failed to adequately explain the sentence.

The district court also erred by failing to explain why it rejected Hernandez-Aldama's arguments in support of a lower sentence. Regarding his base offense level, Hernandez-Aldama presented two bases for finding that the drug quantities attributed to him overstated the seriousness of his offense. First, he argued that, on one occasion, his co-conspirators doubled the weight of three kilograms of cocaine by diluting it, and yet he was held accountable for the full six-kilogram weight that resulted. Second, he argued that the methamphetamine attributed to him was never recovered, and the government suspected it existed based only on a co-conspirator's claims. Hernandez-Aldama also presented arguments about his criminal history and asserted that adequate deterrence could be achieved by a 10-year sentence. The district court did not acknowledge these arguments, let alone provide any reasons for dismissing them. The district court's rationale must appear in the record as this Court "may not guess at the district court's rationale . . . ." *United States v. Torres-Reyes*, 952 F.3d 147, 151 (4th Cir. 2020) (citation omitted).

10

The government concedes that the district court procedurally erred here but asks this Court to remand only for "the district court to provide reasons for the sentence and explain why it rejected Hernandez-Aldama's arguments for a lower sentence." Resp. Br. at 17–18. This is not the appropriate remedy. We have repeatedly held that the appropriate remedy for this error is to vacate the sentence and remand for resentencing. *See, e.g.*, *United States v. Webb*, 965 F.3d 262, 271–72 (4th Cir. 2020); *Provance*, 944 F.3d at 218–20; *Blue*, 877 F.3d at 521–22.

IV.

Thus, for the above reasons, Hernandez-Aldama's sentence is

*VACATED AND REMANDED FOR RESENTENCING.*

11