**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-4234**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KOVACS KIERON TROUTMAN,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:24-cr-00012-TDS-1)

_____

Submitted:  February 25, 2026                     Decided:  June 23, 2026

_____

Before HARRIS and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:**  Olivia Warren, THOMAS, FERGUSON & BESKIND, LLP, Durham, North Carolina, for Appellant.  Dan Bishop, United States Attorney, Joanna G. McFadden, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina; Emily K. Norris, Third-Year Law Student, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kovacs Kieron Troutman pled guilty, pursuant to a written plea agreement, to possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The district court sentenced Troutman to 165 months' imprisonment, an upward variance from the advisory sentencing range of 120-150 months. Troutman appeals the sentence on the basis that it was procedurally unreasonable. For the following reasons, we affirm.

## I.

On October 9, 2023, police officers in Southern Pines, North Carolina, observed James Quick driving away from the Brookside Park apartment complex with two passengers in the vehicle. Quick was known to be banned from visiting the complex and had a suspended driver's license. Officers stopped the vehicle and identified Troutman as the passenger riding in the right rear passenger seat. Troutman was also on the trespass ban list. Troutman's mother was riding in the front passenger seat.

Troutman was arrested for trespassing. As he was being placed in the patrol car, a bag containing 2.14 grams of fentanyl fell to the ground next to him. Officers also found a stolen and loaded .45 caliber handgun in the pouch on the back of the front passenger seat—directly in front of where Troutman had been seated. During the search, but before the officers found the gun, Troutman was filmed in the patrol car and made a statement to the effect that the officers were "gonna find that [gun]," J.A. 111, and he would be "gone for the rest of [his] life" for the "[d]rugs and guns," J.A. 110. At the time of the offense,

2

Troutman was 40 years old and under post-release supervision from a 120-153 months' sentence for violent felony offenses he committed in April 2013.

A federal grand jury indicted Troutman for (1) possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Troutman pled guilty to Count 3 in return for the dismissal of the remaining counts.

The United States Probation Office prepared a presentence report ("PSR") outlining Troutman's personal and family history, including his childhood struggles due to poverty, a nonexistent relationship with his biological father, and emotional neglect by his mother. It also detailed his current relationship with his fiancé and children, his history of mental illness, his educational history, and his work history.

The PSR also outlined Troutman's extensive criminal history, which began at the age of 13 for possession of a knife at school. He also served approximately one year in a juvenile detention facility for drug charges. At the age of 16, he was arrested twice and sentenced to supervised probation for misdemeanor possession of controlled substances, operating a vehicle without a license, and resisting a public officer. His probation was revoked two months after he was sentenced. After he was released, he was arrested for misdemeanor resisting a public officer and possession of a controlled substance.

Troutman's first felony offense—possession of a controlled substance—also occurred when he was 16. He was again placed on supervised probation, which was revoked less than a year later. From the age of 17 to 19, Troutman was convicted of several

3

additional misdemeanor offenses, including communicating a threat of death, operating a vehicle without a license, larceny, and providing false information to an officer. At age 20, Troutman was arrested and convicted in federal court for a felon-in-possession of a firearm charge and sentenced to 43 months' imprisonment. After he served his initial sentence, his supervised release was again revoked, and he was sentenced to an additional 16 months' imprisonment.[1] At age 24, he was convicted of felony possession of cocaine and felony operation of a vehicle to elude arrest, and he was sentenced to 10 to 12 months' imprisonment. Less than a month after his release, he was arrested and convicted of driving while impaired and sentenced to 12 months' probation. His probation was revoked four months after he was sentenced.

Between the ages of 27 and 30, Troutman's criminal activities escalated, resulting in separate arrests for multiple felony offenses, including five charges of assault with a deadly weapon with intent to kill, three of which involved the use of a handgun; two charges of possession of a firearm by a felon; one charge of discharging a weapon in an occupied property; and one charge of selling cocaine. Troutman was incarcerated in state prison from April 2013 until February 2023, during which time he incurred over 30 disciplinary infractions, as well as a felony conviction for possession of a communication device by an inmate and a misdemeanor conviction for possession of a controlled substance. He was released from prison to post-release supervision in February 2023 and

---

[1] Troutman was convicted of this charge on April 1, 2004. On December 9, 2011, after serving his sentences, the judgment was vacated in light of the decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc).

committed the instant offenses approximately seven months later. At the time, he was also known to be a high-ranking member of the Bloods street gang.

After application of enhancements for possessing a stolen firearm and using the firearm in connection with a felony offense, and a reduction for acceptance-of-responsibility, the PSR determined that Troutman's total offense level was 27. With Troutman's category V criminal history, the Guidelines' advisory sentencing range was 120-150 months' imprisonment. The PSR recommended an upward variance to 170 months' imprisonment, based upon Troutman's criminal record, history of violence and involvement with firearms, the fact that there had been no decline in his criminal activity over nearly three decades, his multiple infractions while incarcerated, his history of committing new offenses and otherwise performing unsatisfactorily under prior supervision, and the serious nature of his current offenses.

The district court ultimately sentenced Troutman to 165 months—an upward variance of 15 months. Troutman appeals, arguing that the district court did not adequately address his arguments for a lower sentence.

## II.

### A.

"We review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017) (cleaned up). The sentencing court "is required to provide an individualized assessment based on the facts before the court, and to explain adequately the sentence imposed to allow for meaningful appellate review and to promote

5

the perception of fair sentencing." *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) (cleaned up).  A "sentencing court's explanation is sufficient if it, although somewhat briefly, outlines the defendant's particular history and characteristics not merely in passing or after the fact, but as part of its analysis of the statutory factors and in response to defense counsel's arguments" for a lesser sentence.  *Blue*, 877 F.3d at 519 (cleaned up).  The "district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why it has rejected those arguments." *United States v. Webb*, 965 F.3d 262, 270 (4th Cir. 2020) (cleaned up).  "But this admonition focuses on the whole of a defendant's argument and does not require the court to address every argument a defendant makes. . . ." *United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020).  When the court fully addresses the defendant's "central thesis" in mitigation, it need not "address separately each supporting data point marshalled on its behalf." *United States v. Nance*, 957 F.3d 204, 214 (4th Cir. 2020).

## B.

On appeal, Troutman argues that the district court inadequately considered his arguments for a lesser sentence based upon his difficult childhood, his current relationships with his fiancé and children, and his mental health.  *See* 18 U.S.C. § 3553(a)(1).  Troutman also argues that the district court inadequately addressed his claim that a below-guidelines sentence was warranted to avoid an unwarranted sentence disparity between him and Quick.  *See id.* at § 3553(a)(6).  We disagree.

The district court conducted an extensive sentencing hearing, correctly calculated the guidelines range, and reviewed the PSR and all sentencing memoranda.  After engaging

with the prosecution and defense counsel about the circumstances of the offense and Troutman's objections to the PSR, the district court adopted all matters in the PSR as findings of fact. The district court then afforded the parties an opportunity to argue for an appropriate sentence considering the advisory guidelines and all the § 3553(a) factors.

Defense counsel acknowledged Troutman's significant criminal record and prior acts of violence but argued that a downward variance to 72 months was appropriate because Troutman's felon-in-possession offense, in comparison to most cases, was minor. Counsel argued that the gun was more likely placed in the seat pocket by Quick and not Troutman. And counsel argued that an unwarranted sentencing disparity would result because Quick was not charged in federal court for possession of the firearm and had received a roughly two-year sentence for an unrelated weapons offense in state court. Finally, counsel relied upon Troutman's difficult childhood and the relationships he had with his fiancé and children after his release from prison in February 2013. The court again engaged with counsel during the argument, asking questions about the offense, the location of the persons in the vehicle, and the location of the gun in the vehicle. The court also rejected counsel's argument that the gun was likely placed in the vehicle by Quick, instead of Troutman, relying upon the fact that Troutman had pled guilty to possession of the gun and the gun was in the back seat of the vehicle where only Troutman was seated.

The government requested an upward variance to a sentence between 170 and 180 months based on Troutman's extensive and violent criminal history and, most notably, his eight prior felonies. The government disputed the claim that the offense of conviction was minor, pointing out that Troutman had a loaded, readily accessible firearm when he was

7

approached by police officers and a history of using firearms in the past.  In support of the upward variance, the government also relied upon Troutman's history of poor performance under state and federal supervision, his nearly non-existent employment history, his gang affiliation, and his extremely high risk of recidivism.

The district court then gave Troutman a chance to address the court.  In essence, Troutman represented that he was "not the sum of [his] record, nor [did] the black and white of th[e] PSR describe [him] as a person or a father or a son."  J.A. 55.  He referenced his "limited resources and opportunities" and "the misfortune of [his] situation," *id.*, and asked the court to see him as "a person, a father, and a son, who has faced many challenges and adversity," but "strive[s] to change for the better."  J.A. 56.

Prior to imposing sentence, the court considered all the 3553(a) factors and highlighted those it found particularly important.  Beginning with the nature and circumstances of the offense, the court rejected Troutman's argument that his current felon-in-possession offense was a minor one, observing that Troutman was in possession of a loaded, stolen firearm alongside fentanyl while trespassing on property that he had been banned from visiting—all less than a year after his release from a 10-year sentence for violent crimes.

The court also addressed Troutman's history and characteristics.  The court specifically noted the central thesis of Troutman's arguments for a lesser sentence—that he is "not the sum total of what's in the presentence report"—but explained that these arguments were outweighed by the "conduct that you engaged in and you seem to be continuing to engage in."  J.A. 57.  The court also pointed out that Troutman had never

8

held stable employment and was unemployed at the time of the offense. Instead, the court observed, evidence indicated that Troutman was involved with a gang and he continued to "run[] around with drugs and a gun." J.A. 62.

Finally, the court discussed the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public. The court outlined Troutman's extensive and escalating criminal history, including his repeated prison infractions and the criminal offenses he committed while in custody. The court calculated Troutman's total time to which he had been sentenced to prison—thus far—to have been somewhere between "a low number of roughly 225 months to a high number of 306 months," J.A. 60, and found it significant that this had been insufficient to deter him from committing crimes, and insufficient to protect the public from him.

Having considered the § 3553 factors, the court then sentenced Troutman to 165 months' imprisonment and explained its decision to vary upward 15 months. The court noted Troutman's continued "willingness to commit very dangerous crimes involving the public" and firearms and explained that the sentence (which was less than the time he had already served) was necessary to afford adequate deterrence and protect the public. Again, the court recognized Troutman's mitigating arguments, but found them outweighed by these dangers. *See* J.A. 63 ("[Y]ou've been sentenced to prison on multiple occasions, and you just come right out and do the same thing again, as if you're just willing to take the risk of the effect it's going to have on you and on your family. And there's a consequence for that."). In sum, the court plainly considered the central thesis of Troutman's arguments,

9

explained why the other factors outweighed them, and adequately explained the need for the sentence imposed.

Troutman's argument that the district court failed to adequately consider his argument that a lesser sentence was warranted to avoid a sentencing disparity between Troutman and Quick is equally unpersuasive. Although the district court did not separately reference this argument when it pronounced sentence, the court plainly considered and rejected the claim during the sentencing hearing. The court clarified the location of the occupants in the vehicle and the location of the gun, and expressly rejected defense counsel's argument that Quick likely owned the gun and placed it in the rear seat pocket. Moreover, defense counsel's disparity argument rested upon his representation that Quick was not charged federally for this firearm and received a roughly 2-year state court sentence for an unrelated firearm by felon offense. We see no error in the district court's implicit finding that there was insufficient evidence that Quick was in constructive possession of the gun or that Troutman and Quick were similarly situated defendants for purposes of § 3553(a)(6).

Finally, even if we were to conclude that the district court should have said more, any error would be harmless. A reviewing court may find an error harmless where the defendant's non-frivolous arguments are weak—either in fact or in presentation—when compared to the district court's reasons for imposing its chosen sentence. *See United States v. Boulware*, 604 F.3d 832, 839-40 (4th Cir. 2010). Troutman's mitigating arguments are not particularly compelling when juxtaposed with his lengthy and violent criminal history and the circumstances surrounding the instant offense. The district court provided specific

reasons for imposing the upward variance sentence, and it is farfetched to think that the court would impose a difference sentence on remand based upon the weak and unsubstantiated mitigating arguments that Troutman claims were overlooked. *See id.* at 840 ("[T]he notion that having to explain its analysis further [will] change[] the district court's mind . . . is simply unrealistic . . . and remand for resentencing would be a pointless waste of resources.").

## III.

For the foregoing reasons, we affirm Troutman's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*