**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-4319**

───────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

IKEVIAUN QUAMONN JOHNSON,

Defendant - Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Terrence W. Boyle, District Judge.  (4:21-cr-00018-BO-1)

───────────────

Argued:  November 1, 2024                                Decided:  January 27, 2025

───────────────

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge King and Judge Harris join.

───────────────

**ARGUED:**  Paul K. Sun, Jr., ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant.   Katherine Simpson Englander, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Lucy Partain Brown, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

While Willard Acklin was driving a black Ford Explorer SUV in pursuit of a white Hyundai sedan thought to be occupied by rival gang members, his friend, Ikeviaun Johnson, who was a passenger in the Explorer, fired eight shots at the sedan. As it turned out, the white sedan was an unmarked car occupied by federal law enforcement officers. After the Explorer was stopped by local law enforcement, the local officers found a gun on the back floor of the vehicle.

Johnson was charged and convicted for assaulting federal officers engaged in the performance of their official duties, in violation of 18 U.S.C. § 111(a)(1), (b), and discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The district court imposed an above-Guidelines sentence of 198 months' imprisonment.

Johnson contends on appeal (1) that he was charged and convicted under a defective indictment that omitted the word "forcibly" in alleging the assault, a necessary element of the offense; (2) that the government, in any event, failed to prove an assault; and (3) that the district court did not adequately explain or justify its above-Guidelines sentence. For the reasons that we give herein, we reject these arguments and affirm.

I

On an October afternoon in 2020, in Greenville, North Carolina, FBI Special Agent Pete Mines and Task Force Officer Matthew McKnight were dressed in plain clothes; driving in a white, unmarked Hyundai Sonata; and engaged in a gang, drug, and gun

2

investigation. They noticed a black Ford Explorer speeding up behind them on an otherwise empty road. After the agents made some turns in an attempt to dump what appeared to be a tail, they drove past the Explorer, which had stopped on a road intersecting theirs, and someone in the Explorer fired eight shots at them, although none of the shots hit the agents or their vehicle. After the agents radioed for backup, local law enforcement officers stopped the Explorer and ordered its six passengers to exit the vehicle. They found a handgun with an extended magazine on the backseat floorboard.

After the stop, Ikeviaun Johnson, a passenger in the Explorer, told the officers that Willard Acklin, the driver, had fired the shots. Other passengers stated that they did not know who fired the shots. Several days later, however, Acklin and two other passengers in the vehicle identified Johnson as the shooter. They explained that Acklin and Johnson were pursuing the agents' white sedan under the belief that it was occupied by rival gang members, and when Acklin had stopped at the intersection, Johnson, who was in the backseat, rolled down the window and fired the shots from outside the window while the white sedan passed by.

Acklin and Johnson were indicted for, among other charges, (1) assaulting, and aiding and abetting in the assault of, federal agents using a deadly weapon, in violation of 18 U.S.C. §§ 111(a)(1), 111(b), and 2; and (2) discharging, and aiding and abetting the discharge of, a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.

Acklin pleaded guilty and was sentenced to 40 months' imprisonment. Johnson, however, went to trial, and a jury convicted him on both counts. At sentencing, the district

court calculated Johnson's Guidelines range for the assault count to be 30 to 37 months' imprisonment and for the § 924(c) count to be the mandatory consecutive term of 120 months, for a total Guidelines range of 150 to 157 months' imprisonment. After reviewing the full circumstances of Johnson's conduct, however, the court departed upward on the assault count and imposed a 78-month sentence for it. Alternatively, the court announced that it would impose a variant sentence of the same length based on application of the § 3553(a) factors. Thus, the total sentence that the court imposed was 198 months' imprisonment.

From the district court's judgment dated April 26, 2023, Johnson filed this appeal.

II

Johnson contends first that the count in the indictment charging him with assault of a federal officer was defective because it did not include an element of the offense. While 18 U.S.C. § 111 specifies that the defendant must have "*forcibly* assault[ed]" (emphasis added) a federal officer, Johnson's indictment paraphrased that portion of § 111 and charged that he "*feloniously* assault[ed]" (emphasis added) the federal officers. That sentence in the indictment apparently substituted "feloniously" for "forcibly." Accordingly, Johnson claims that the indictment was invalid because it failed to give him notice of the charge made against him. *See* Fed. R. Crim. P. 7(c)(1); *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Johnson acknowledges that he has raised this issue for the first time on appeal and that therefore the plain error standard of review applies. *See* Fed. R. Crim. P. 52(b); *Greer*

4

*v. United States*, 593 U.S. 503, 507–08 (2021).  He contends, nonetheless, that he satisfies that more difficult review standard, especially in light of his serious challenge to the sufficiency of the evidence.

Johnson's argument, however, fails on several levels.  *First*, the indictment adequately put Johnson on notice that the charge against him involved his assault of a federal officer *with force*.  *Second*, even if the indictment were to be considered defective by the omission of the word "forcibly," the district court summarized the indictment for the jury as requiring *force*, consistent with the statutory language, and instructed the jury of the need, in returning a guilty verdict, to find that Johnson "forcibly" assaulted a federal officer.  *Third* and finally, the jury's finding that Johnson fired eight shots — a finding necessary for its guilty verdict — inherently included a finding that Johnson assaulted the officers with *force*.  Therefore any error did not affect his substantial rights, thus failing the plain error standard of review.

Section 111(a)(1) provides that "[w]hoever . . . *forcibly* assaults . . . any [officer or employee of the United States] while engaged in or on account of the performance of official duties . . . shall [be punished]."  18 U.S.C. § 111(a)(1) (emphasis added).  And § 111(b) provides for an enhanced penalty for anyone who "uses a deadly or dangerous weapon" "in the commission of" a § 111(a) forcible assault.  *Id.* § 111(b).  "Forcibly," which modifies "assaults," means "effected by force."  *Forcible*, Merriam-Webster's Collegiate Dictionary 489 (11th ed. 2020).  "Force" in the context of common-law assault and battery, however, may "be satisfied by even the slightest offensive touching."  *Johnson v. United States*, 559 U.S. 133, 139 (2010).  Model federal jury instructions include an

5

instruction for § 111 that defines "forcibly assaults" to mean "any deliberate and intentional attempt or threat to inflict physical injury upon another with force or strength when that attempt or threat is coupled with an apparent present ability to do so." 2 Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 24:08 (6th ed. 2023); *see also, e.g.*, *United States v. Ettinger*, 344 F.3d 1149, 1159 (11th Cir. 2003); *United States v. Hathaway*, 318 F.3d 1001, 1004 (10th Cir. 2003); *United States v. McCulligan*, 256 F.3d 97, 100 (3d Cir. 2001). Johnson makes no objection to this interpretation of § 111.

We agree with Johnson that "forcibly" is an element of a § 111 offense and must be alleged in any indictment charging that offense so as to give the defendant adequate notice of the charge made against him. *See Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952); *United States v. McDaniel*, 85 F.4th 176, 185 (4th Cir. 2023). In this case, however, the omission of the word "forcibly" before the word "assault" did not deny Johnson notice that he was charged with an assault *effected by force*.

Focusing on the operative words of the indictment, Johnson was charged as follows:

> On or about October 16, 2020 . . . JOHNSON . . . did *knowingly* and feloniously assault [two federal officers] while [they] were engaged in the performance of their official duties, and *used a deadly and dangerous weapon* in the commission of said offense, in violation of [18 U.S.C. §§] 111(a)(1) and 111(b), and 2.

(Emphasis added). These allegations have, to be sure, collapsed a charge under § 111(a) with a charge under § 111(b), even though they amount to separate crimes. *See McDaniel*, 85 F.4th at 185. But a violation of § 111(a) is a lesser-included offense of that set forth in § 111(b); knowingly committing an assault using "a deadly and dangerous weapon" under § 111(b) surely includes an assault effected by common-law force under § 111(a). Thus,

6

while "forcibly" in § 111(a) does not necessarily include a requirement of *violent* force, *McDaniel*, 85 F.4th at 185, the requirement of violent force in § 111(b) does include common-law force as used in in § 111(a). Thus, Johnson was given notice of all the lesser-included elements of a § 111(a) violation because a charge that he knowingly assaulted federal officers using a deadly and dangerous weapon necessarily alleged that he had "forcibly assault[ed]" the federal officers. In the peculiar circumstances of this indictment, we therefore find Johnson's argument that the indictment was defective in failing to give him notice of a charge requiring forcible assault is without merit.

*Second*, the omission of the word "forcibly" before "assault" did not affect Johnson's substantial rights. While we conclude that the particular indictment in this case was not defective in omitting "forcibly," the government in its brief nonetheless concedes that the omission was plain error. Its argument in defense of the indictment rests on its contention that the error did not affect the defendant's substantial rights because the district court properly instructed the jury, and Johnson has not otherwise shown an impact from the error.

In summarizing the indictment for the jury, the district court stated:

So Count 4 [the count alleging the assault charge] of the superseding indictment charges that on October 16, 2020 in this District the Defendant did knowingly and intentionally *forcibly* assault, resist, oppose, impede, intimidate and interfere with victims PGM and MTB [which the court identified as the federal agents involved] while they were engaged in and on account of the performance of their official duties by means of a deadly and dangerous weapon, namely a firearm, in violation of United States Code.

Then, after summarizing the charge consistent with § 111, the court instructed the jury that, to find Johnson guilty, it had to find that the assaults were committed with force. Indeed,

7

the court used the word "forcibly" eight different times in its instructions. The court instructed the jury:

> The United States Code makes it a crime for whoever *forcibly* assaults, resists, opposes, impedes, intimidates, or interferes with any person designed under Section 1114 of this Title as officers and employees of the United States while engaged in and on account of performance of their duties, official duties, and in the commission of any such acts uses a deadly or dangerous weapon shall be guilty of an offense against the United States.

> The essential elements of that crime — the essential elements of Count 4 are, and the Government has to prove these beyond a reasonable doubt, are first that the Defendant *forcibly* assaulted victims one and two. An assault in the law does not require injury. So the expression of *force* illegally against a person is an assault. You don't have to like shoot at somebody but hit them, if you follow. Assault is the commission of an act that would or could cause violence and injury and death. So first the Defendant *forcibly* assaulted victims one and two. Second, at the time of this *forcible* assault, victims one and two were officers or employees of the United States. Third, that victims one and two were engaged in official duties at the time of the assault. Fourth, that the assault was made while *using a deadly or dangerous weapon* and, fifth, that the assault was done in a voluntary and intentional manner by the Defendant.

(Emphasis added). After instructing the jury on what it needed to find to return a guilty verdict on the § 111 count, the court specifically defined the term "forcibly assaults":

> The term forcibly assaults means any deliberate and intentional attempt or threat to inflict physical injury upon another with force or strike when that attempt or threat is coupled with an apparent present ability to do so. Although forcible assault may be committed by a defendant without actually touching, striking or doing bodily harm to another. The Government must prove that the actions of the Defendant were of such a nature to put the person against whom they are directed in fear of immediate bodily harm.

Thus, the district court clearly instructed the jury that the crime with which Johnson was charged must be committed with a forcible assault, and it defined for the jury what forcible assault meant. And Johnson does not challenge the district court's instructions. Because

8

we presume that the jury followed the district court's instructions and assessed the evidence against the requirement that Johnson have *forcibly assaulted* the two federal officers while they were engaged in official duties, we agree with the government that the error in omitting "forcibly" from the indictment did not affect Johnson's substantial rights.

*Third* and finally, if the jury had found that Johnson did not fire the shots, it would have acquitted him. But because it convicted him instead, it necessarily found that Johnson fired eight shots, a finding that inherently included a finding of force. For this reason too the alleged error in the indictment did not affect Johnson's substantial rights. Thus, we need not, in these circumstances, correct the alleged error in the interests of the fairness, integrity, or public reputation of the judicial proceeding. *See Greer*, 593 U.S. at 507–08.

In short, § 111 requires that the assault be effected with force; the indictment gave Johnson notice that he was charged with assaulting the federal officers with force; and the district court properly instructed the jury on the need to find that the assault was indeed committed with force. We thus reject Johnson's challenge to the indictment.

## III

Johnson next contends that, in any event, the evidence was insufficient to prove that he in fact assaulted the federal officers. He notes that a § 111 assault has been recognized to incorporate the common-law definition of assault, which, he recites, "is committed when a person willfully attempts to inflict injury on another, or threatens to inflict injury on another, coupled with an apparent present ability to do so, *causing a reasonable apprehension of immediate bodily harm*." (Emphasis added). He argues that the

9

government failed to prove (1) "that the agents had a reasonable apprehension of immediate bodily harm," and (2) that Johnson actually "shot *at* the officers." Indeed, he points out that even though a passenger in Johnson's vehicle testified that Johnson fired the shots, she said that he did so "at the car that was behind us." Yet, there was no car behind the black Explorer. The evidence showed that the white sedan was never behind their vehicle, and there were no other vehicles on the road. Despite this error in the passenger's testimony, we note that Johnson's argument overlooks the full scope of the evidence presented at trial, which the jury was entitled to accept.

The evidence showed that Acklin had followed the white Hyundai sedan, believing that it was occupied by rival gang members, and he again encountered the sedan at an intersection. At that point, Johnson rolled down his window, held his gun outside the window, and fired eight shots. The FBI agents testified that they heard the shots and believed that they were aimed at them. According to the testimony, Special Agent Mines told Officer McKnight, "We're being shot at," and Officer McKnight agreed. They noted that there were no other cars on the road or individuals in the area who could have been targets. In response to the shots, Officer McKnight radioed for backup, announcing that they were law enforcement officers "taking fire." Special Agent Mines then turned the white sedan around to pursue the black Explorer as it fled the scene. As the officers lost sight of the black Explorer, they stopped and donned body armor before continuing the search. About six minutes after the shots had been fired, they received notice that local law enforcement had stopped the black Explorer.

10

This testimony, which was undisputed, demonstrated that the officers had a reasonable apprehension of being harmed by Johnson's shots. First, both officers believed that they had been targets of the shots. Second, they reacted as if they were indeed the targets — they radioed in for assistance, announcing that they had taken fire; they turned around to pursue the black Explorer; and they put on body armor. These actions objectively demonstrated that the officers believed that they were the targets of the shots and that they apprehended bodily harm.

Moreover, logic and common sense demonstrate that the officers reasonably believed that they were the target of Johnson's shots. All agree that the officers had been pursued by a black Explorer when there were no other vehicles on the road. And no one disputes that eight shots were fired from the Explorer in reasonably close proximity — 150 meters away — with no other target in the area.

Johnson also contends that the government failed to show that he actually shot *at* the agents. But such proof was not needed to demonstrate the elements of an assault. Even under Johnson's articulation of assault, the government needed only to demonstrate that the officers had a reasonable apprehension of immediate bodily harm, and the government fairly demonstrated that. Shots had been fired from a pursuing vehicle, and the officers were the only possible targets in the area. In response, they gave chase to the vehicle and put on body armor.

In sum, we conclude that the government presented ample evidence of a forcible assault, as necessary for Johnson's conviction under § 111.

11

IV

Finally, Johnson challenges the district court's sentencing procedure. He argues that the court "procedurally erred when it sentenced Mr. Johnson to a term of imprisonment substantially above the Guidelines range without providing an adequate explanation for the substantial upward variance or departure." He claims that the court failed to justify the sentence "with an individualized rationale." (Quoting *United States v. Carter*, 564 F.3d 325, 328–29 (4th Cir. 2009)).

At the outset of the sentencing proceeding, the district court calculated Johnson's Guidelines range. For the assault conviction, it concluded that the sentencing range was 30 to 37 months' imprisonment, and, when that range was coupled with the consecutive 120-month sentence for the § 924(c) conviction, the resulting range was 150 to 157 months' imprisonment. No party has objected to this calculation.

After the court completed its calculation and heard allocution, the government then requested an upward variant sentence of 240 months' imprisonment. It argued for such a sentence based not only on Johnson's conduct but also on his bragging about and carrying firearms, his shooting at what he thought were rival gang members from a vehicle in which two minors were passengers, his lack of remorse, his lying about his conduct, and his objective dangerousness to the Greenville, North Carolina community. The government also noted that such a sentence was necessary to avoid any unwarranted sentencing disparity, as Acklin was sentenced to 40 months' imprisonment and "[a]ll he did was drive," whereas Johnson was the shooter.

12

In response, Johnson requested a sentence of 150 months' imprisonment, which was at the bottom of the Guidelines' range. He justified this request based on the fact that such a sentence was "almost four times what Mr. Acklin received." He also asked the court for mercy based on the fact that he was 23, that he had a child whom "he's never held," and that he never had a father and desperately wanted "to be a father" to his child. Finally, he argued that a 240-month sentence, as requested by the government, would result in an unwarranted disparity because such a sentence would be six times what Acklin received, which was 40 months' imprisonment.

After considering the arguments of counsel, hearing Johnson's allocution, and receiving four allocution letters submitted by both parties, the court turned to give the reasons for the sentence it intended to impose. It began:

> Can you even begin to believe the outrage that would be associated with gunning down two FBI agents on a city street in Greenville, North Carolina, by a gang member? I mean, talk about the decline of American society and the decline of the rule of law and justice in our cities. That would be a marquee event and when he fired those eight shots at the car that two FBI agents were in, he could've killed them and it was just the result of lucky physics, the bullets not hitting the target. But if it had, and we have every reason to believe it was intended to, you would have two dead FBI agents and this gentleman. What do you think the outcome would be then? The murder of a federal agent, what's an appropriate punishment for that?

The court added, "And as far as remorse goes or repentance, I don't see any sign of it." The court then addressed additional factors that it had considered. It said that it "would like to make parts of the presentence report the grounds for [its] consideration of an upward variance or an upward departure." The court then proceeded systematically to set forth those factors. It stated, in part:

13

It appears that the Defendant in this case, in paragraph 13 of the presentence report, lied in denying that he was the shooter and in trying to direct attention to Acklin who was not the shooter. . . . The evidence is clear from paragraph 16 that Johnson was the shooter as supported by a confidential source D2. The evidence at trial was compelling and overwhelming that Johnson was the shooter. Paragraph 18 of the presentence report is incorporated in its entirety into the Court's decision for an upward variance. I'll ask that the appellate court review the presentence report in paragraphs 18 and 19. These [are] relied on by the Court in fashioning an upward variance.

Paragraph 18 of the presentence report indicated that Johnson had attempted to join the Bloods and the Crips, two gangs in the Greenville area, but "was rejected by both gangs." It noted that Johnson also attempted to join the Moore Science Temple, and to do so he sent a communication "with his blood on it to a member of the group." Paragraph 18 also pointed out that a cooperating witness advised the probation office that Johnson had shown the cooperating witness "a photograph of himself with the firearm" used in the offense. The cooperating witness added that "Johnson had an infatuation with firearms."

After setting forth its grounds for an upward variance or an upward departure, the court then followed the procedure for an upward departure, "stair-stepping" the process until it reached an appropriate sentence, which was indicated by an offense level of 19 and a Criminal History Category VI — a sentence of 63 to 78 months' imprisonment for the assault conviction. The court concluded that that range "more appropriately fit[] the seriousness of this offense and the need for punishment that is equivalent to the danger and the attack on law enforcement institution[s]." The court then selected the top of that Guidelines range for a sentence of 78 months' imprisonment on the assault conviction, which, when combined with the mandatory sentence of 120 months for the § 924(c) conviction, resulted in a total sentence of 198 months' imprisonment. After conducting

14

the departure procedure, the court alternatively stated that the sentence was an upward variance based on its consideration of the § 3553(a) factors and "the seven auxiliary factors." After stating its intent to impose the 198-month sentence, the court invited the parties "to say anything about the sentencing" before it would make the sentence "final." Johnson's counsel responded that he "respectfully disagree[d]" with the sentence and recognized his right to appeal.

We agree with Johnson that for every sentence the district court imposes, it must "place on the record an individualized assessment based on the particular facts of the case before it." *United States v. Lozano*, 962 F.3d 773, 782 (4th Cir. 2020) (cleaned up). When a district court gives a sentence outside the Guidelines range, it does not necessarily need to find "extraordinary" circumstances. *Gall v. United States*, 552 U.S. 38, 47 (2007). But it must support a major departure from the Guidelines with a more significant justification than a minor departure. *Id.* at 50. And in reviewing a district court's variant sentence, a court of appeals "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," even if "the appellate court might reasonably have concluded that a different sentence was appropriate." *Id.* at 51. "At bottom, the sentencing judge need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

15

Applying these principles, considering the explanations given by the district court for its above-Guidelines sentence, and giving deference to the district court's exercise of discretion, we readily conclude that that the court adequately justified its decision with an individualized rationale.    Accordingly, we affirm the sentence that the district court imposed.

*    *    *

For the reasons given, we affirm the judgment of the district court.

AFFIRMED